IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTINE BOONE,** | : | **CIVIL NO. 1:CV-04-0588** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA OFFICE OF** | : | |
| **VOCATIONAL REHABILITATION,** | : | |
| **an agency of the Commonwealth of** | : | |
| **Pennsylvania; PENNSYLVANIA** | : | |
| **DEPARTMENT OF LABOR AND** | : | |
| **INDUSTRY, an agency of the** | : | |
| **Commonwealth of Pennsylvania;** | : | |
| **STEPHEN NASUTI, an individual;** | : | |
| **STEPHEN SCHMERIN, Secretary of** | : | |
| **Labor and Industry; STEPHEN** | : | |
| **SCHMERIN, an individual; and** | : | |
| **UNNAMED COCONSPIRATORS,** | : | |
| | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

Before the court is Defendants' partial motion to dismiss.  (Doc. 56.)
Plaintiff filed suit against Defendants on eight counts.  In their motion to dismiss,
Defendants assert that all or part of seven of the counts should be dismissed on
immunity grounds or for failure to state a claim upon which relief can be granted.
For the reasons set forth below, the court will grant Defendants' motion in part and
deny it in part.

I.          **Background**

       A.          **Factual Background**

       The following facts are based on the allegations in Plaintiff's Second Amended Complaint and the exhibits attached thereto.  In or around June 2000, Plaintiff, who is blind, was hired to be the Director of the Pennsylvania Bureau of Blindness & Visual Services, which is a division of the Office of Vocational Rehabilitation ("OVR").  (Second Am. Compl. ¶ 22.)  The OVR is a component of the Pennsylvania Department of Labor and Industry ("the Department"), which is headed by Defendant Stephen Schmerin.  (*Id*. ¶ 19.)

       In her position as Director of the Pennsylvania Bureau of Blindness & Visual Services, Plaintiff often interacted with Defendant Stephen Nasuti, who as of June 2001 was the Executive Director of the OVR.  (*Id*. ¶ 25.)  Mr. Nasuti allegedly acted wrongfully toward Plaintiff in many ways.  For example, he did not take measures, such as providing Plaintiff with enough of an opportunity to print out meeting agendas in braille prior to the meeting, to compensate for Plaintiff's blindness.  (*Id*. ¶¶ 26-32.)  Additionally, Mr. Nasuti undermined Plaintiff's ability to perform her job functions.  (*Id*. ¶¶ 33, 35-36.)  Ultimately, Mr. Nasuti fired Plaintiff on August 14, 2003.  (*Id*. ¶ 51.)  Her termination letter stated that such employment action was taken for "insubordination" and "lack of cooperation," among other things.  (Second Am. Compl., Ex. 6 at 1.)  Plaintiff did not receive a hearing before her termination.  (Second Am. Compl. ¶ 84.)

       Plaintiff's termination caused "an uproar . . . in which numerous advocates of the blind and disabled protested her termination."  (*Id*. ¶ 56.)  In response, the Department along with the OVR issued a statement saying that

Plaintiff's termination was made "with the best interests of the blind and visually impaired community in mind." (*Id*.) In addition, the Department corresponded with various individuals and organizations regarding the reasons for the termination. (*Id*.) In one such correspondence, Secretary Schmerin explained that Plaintiff's firing was based on "compelling, performance-based reasons involving behavior unacceptable from an employee – especially from an employee in a policy-making position as the one [Plaintiff] held." (*Id*.; Second Am. Compl., Ex. 7 at 2.)

Following Plaintiff's termination, she continually sought other employment. (Second Am. Compl. ¶ 66.) In April 2004, Plaintiff found a part-time position as Director of Legal Affairs and Training for the Blind Industries & Services of Maryland. (*Id*.) In this position, Plaintiff earns less money and pays more for health insurance coverage. (*Id*.) Plaintiff also has to commute four hours to and from her place of employment. (*Id*.)

## B.   <u>Procedural History</u>

Plaintiff originally filed suit in state court, alleging state-law claims as well as a claim under 42 U.S.C. § 1983. Defendants then removed the case to this court. The parties stipulated to a stay of the proceedings while Plaintiff exhausted her administrative remedies on related disability discrimination claims. After the stay was lifted, Plaintiff filed an Amended Complaint, which added claims under the Pennsylvania Human Relations Act ("PHRA") and the Americans with Disabilities Act ("ADA").

The court later granted Plaintiff leave to file a Second Amended Complaint. Plaintiff's claims in this complaint are (1) Count I: Defamation against the Department; (2) Count II: Wrongful Discharge in Violation of Public Policy against

the OVR and the Department; (3) Count III: Intentional Infliction of Emotional Distress against Mr. Nasuti; (4) Count IV: Breach of Implied Contract against the OVR and the Department; (5) Count V: 42 U.S.C. § 1983 claims against the OVR, the Department, and Mr. Nasuti and Secretary Schmerin in their individual capacities; (6) Count VI: PHRA and ADA claims against the OVR and the Department;[1] (7) Count VII: PHRA claims against Mr. Nasuti and Secretary Schmerin; and (8) Count VIII: Conspiracy to Violate 42 U.S.C. § 1983 against all of the defendants.

Defendants filed a motion for partial dismissal of Plaintiff's claims. The parties have briefed the issues, and the matter is now ripe for disposition.

**II.**          **Legal Standard: Motion to Dismiss**

In deciding a motion to dismiss pursuant to Federal Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn from the face of the complaint. *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003). "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant[s] on notice of the essential elements of the plaintiff's cause of action." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). The court will not dismiss a complaint for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Port Auth. of New York & New Jersey v. Arcadian Corp.*, 189 F.3d 305, 311 (3d Cir. 1999).

---

[1] Plaintiff's ADA claims are brought under Title I of the ADA.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Id.* Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a complaint that is merely deficient. *See, e.g., Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 336 F.3d 229, 236 (3d Cir. 2004).

**III.       Discussion**

Defendants argue that Plaintiff's Second Amended Complaint should be dismissed in part on sovereign or Eleventh Amendment immunity grounds and in part for failure to state a claim upon which relief may be granted.  The court will address Defendants' arguments as they pertain to each of Plaintiff's claims below.  As an initial matter, however, the court will address an argument asserted by Plaintiff that has a significant impact on the resolution of the immunity issues raised by Defendants.  Plaintiff contends that Defendants waived their right to assert Eleventh Amendment immunity when they removed the captioned matter to federal court.

**A.       Waiver By Removal**

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  At a minimum, the Eleventh Amendment stands for two propositions: "[F]irst, that each State is a sovereign entity in our federal system; and second, that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (internal quotations omitted); *see also Alden v. Maine*, 527 U.S. 706, 713 (1999) (noting that the phrase "Eleventh Amendment immunity" is "something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment").  In short, the Eleventh Amendment "prohibits federal courts from entertaining suits by private parties against States and their agencies." *Alabama v. Pugh*, 438 U.S. 781, 791 (1978).  This bar applies regardless of whether the

plaintiff seeks monetary damages or injunctive relief against a state.  *Seminole Tribe*, 517 U.S. at 58 (citing *Cory v. White*, 457 U.S. 85, 90 (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is sought.")).

Under certain circumstances, the Eleventh Amendment does not bar federal courts from entertaining suits against states.  First, suit is permitted where a state has waived its immunity.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985).  Second, Congress may validly abrogate sovereign immunity through its enforcement powers pursuant to the Fourteenth Amendment.  *Seminole Tribe*, 517 U.S. at 57-73.  Third, Eleventh Amendment immunity is inapplicable where the plaintiff sues state officials in their official capacities seeking only prospective injunctive relief.  *See Ex Parte Young*, 209 U.S. 123 (1908).  In this case, Plaintiff contends that Defendants waived their Eleventh Amendment immunity by removing the case to federal court.

The starting point for any discussion of whether a state's act of removing a lawsuit from state to federal court waives Eleventh Amendment immunity is the Supreme Court's decision in *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613 (2002).  In *Lapides*, a professor employed by the Georgia state university system brought suit in a Georgia state court alleging violations of 42 U.S.C. § 1983 and the Georgia Tort Claims Act.  *Id*. at 616.  The defendants removed the case to federal court and asserted Eleventh Amendment immunity even though they conceded that their sovereign immunity to state-law suits had been waived by a state statute.  *Id*.  The plaintiff's federal claims had been properly dismissed because the state did not qualify as a "person" under § 1983, *Will*

7

*v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); therefore, the only remaining claims before the Supreme Court were state-law claims against the state in which the state had explicitly waived immunity from suit. *Lapides*, 535 U.S. at 617.

The Supreme Court held that the state waived its Eleventh Amendment immunity when it voluntarily invoked the jurisdiction of a federal court through removal. *Id*. at 617, 624. In basing its decision on the so-called "voluntary invocation" principle, the Supreme Court reasoned that

> [i]t would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand. And a Constitution that permitted States to follow their litigation interests by freely asserting both claims in the same case could generate seriously unfair results.

*Id*. at 619. In other words, the Court was concerned with the "[Eleventh] Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages." *Id*. at 620. Further, the act of removal in and of itself, without any analysis of whether it stemmed from a "benign motive," evinced a clear intention of waiver as required by *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 676 (1999). *Lapides*, 535 U.S. at 620. A state's motives in removing a case to federal court, the Court concluded, would be too difficult to evaluate. *Id*. at 621. In the view of the unanimous *Lapides* Court,

"jurisdictional rules should be clear" and should prevent a state from "achiev[ing] unfair tactical advantages."  *Id*.[2]

The Supreme Court's opinion in *Lapides* is significant both for what it decided and what it did not decide.  The Court decided that a state waives its Eleventh Amendment immunity when it voluntarily removes to federal court state-law claims in which it had expressly waived immunity.  *Id*. at 617, 624.  The Court did not decide whether a state's act of removal would constitute a waiver of its Eleventh Amendment immunity for federal claims.  *Id*. at 617.  Likewise, the Court did not decide "the scope of waiver by removal in a situation where the State's underlying sovereign immunity from suit has not been waived or abrogated in state court."  *Id*. at 617-18.

Although the Third Circuit has not spoken on the matter in a precedential opinion, *cf. Fidtler v. Pa. Dep't of Corr.*, 55 Fed. Appx. 33, 35 (3d Cir. 2002), the issues the Supreme Court did not decide in *Lapides* have generated much discussion in the federal courts of appeals.  The crux of the discussion has centered around how broadly *Lapides* should be interpreted.  Does the reasoning in *Lapides* extend to all state and federal claims?  *See Embury v. King*, 361 F.3d 562, 564 (9th Cir. 2004); *see also Estes v. Wyo. Dep't of Transp.*, 302 F.3d 1200, 1204-06 (10th Cir. 2002) (holding that the state waived its sovereign immunity by removing an ADA claim and a state-law claim in which the state had waived its immunity by statute, but

---

[2]Defendants assert that in their notice of removal, they explicitly stated their intention to not waive any claims of immunity.  The Supreme Court's decision in *Lapides*, however, makes it clear that the act of removal is nonetheless a clear indication of a state's voluntary waiver of immunity.  *Lapides*, 535 U.S. at 624. Because Defendants should have been on notice that the rule from *Lapides* would apply in this case, the court concludes that their actions speak louder than their words.  Thus, to the extent the court finds that the act of removal waives a state's immunity, Defendants' statement in their notice of removal will not change the result.

not having occasion to decide whether state-law claims in which immunity had not been waived would receive similar treatment). Or is the "voluntary invocation" principle limited to cases in which a state would obtain an "unfair tactical advantage," *Lapides*, 535 U.S. at 621, by enjoying immunity in federal court that it would not have otherwise enjoyed in state court? *See Stewart v. North Carolina*, 393 F.3d 484, 490 (4th Cir. 2005); *Omosegbon v. Wells*, 335 F.3d 668, 673-74 (7th Cir. 2003). Or is there a middle ground? *See Meyers v. Benning*, __ F.3d __, 2005 WL 1178010, at \*15 (5th Cir. May 19, 2005) (concluding that a state completely waives its immunity from *suit* when it voluntarily removes a case to federal court, but retains its immunity from *liability* as prescribed by the state's own law).

Plaintiff urges the court to adopt the approach set forth in *Embury*. In *Embury*, the Ninth Circuit held that "the rule in *Lapides* applies to federal claims as well as to state law claims."[3] *Embury*, 361 F.3d at 564. The Ninth Circuit reasoned that the language of the Eleventh Amendment "speaks, not to immunity from claims, but to federal jurisdiction over 'any suit.' Likewise, removal is not of a claim, but of a 'case,' which is to say, the 'suit.'" *Id*. at 565. The *Embury* court noted that the Supreme Court in *Lapides* used similarly broad terms such as "case" and "matter" in discussing the "voluntary invocation" principle, which "suggests that the federal court's power extends, once immunity is waived, to the entire case." *Id*. at 565. The Ninth Circuit also emphasized the Supreme Court's reliance on the need for a clear

---

[3]The Ninth Circuit also concluded that the rule in *Lapides* applied "to claims asserted after removal as well as to those asserted before removal." *Embury*, 361 F.3d at 564. Plaintiff relies on this statement because she added claims to her complaint following removal. The court agrees with the Ninth Circuit insofar as whatever waiver rule applied when the case was removed would also apply to additional claims asserted after removal. *Id*. at 564-65 (noting that once a state removes a case to federal court, it knowingly subjects itself to the liberal rules of amendment of complaints).

jurisdictional rule and asserted that its formulation yielded a "straightforward, easy-to-administer rule in accord with *Lapides*: Removal waives Eleventh Amendment immunity." *Id*. at 566.

Upon consideration of Plaintiff's arguments and the reasoning in *Embury*, this court concludes that the Ninth Circuit's holding is too broad. First, even though the language of the Eleventh Amendment speaks in terms of "suits," it is often applied to just part of a suit. For instance, the Eleventh Amendment may apply to an ADA claim, but not to a Family and Medical Leave Act ("FMLA") claim brought in the same suit. *Compare Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001) (holding that Congress did not validly abrogate states' sovereign immunity from suit under Title I of the ADA) *with Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 725 (2003) (holding that Congress acted within its authority in abrogating states' immunity from suit under the FMLA). Second, the *Embury* court's holding would subject states to potential liability for state-law claims in which it had *not* expressly waived its immunity. A state's sovereign immunity is "a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution." *Alden v. Maine*, 527 U.S. 706, 713 (1999). Certainly, the desirability of an "easy-to-administer" rule, *Embury*, 361 F.3d at 566, would not trump one of the core principles of states' sovereignty. Finally, such a broad rule might provide a plaintiff with an unfair advantage. Any time a state sought to remove a case to federal court it would lose all of its immunity, even if it otherwise would have enjoyed some degree of immunity had the case proceeded in state court.

In light of these considerations, the court will not follow the Ninth Circuit's reasoning in *Embury*. Instead, the court concludes that the Fourth Circuit's

decision in *Stewart v. North Carolina*, 393 F.3d 484 (4th Cir. 2005) provides a more accurate and sensible formulation for addressing the effect of a state's removal of a case to federal court on its sovereign immunity.  In *Stewart*, the Fourth Circuit held that a state does not waive its sovereign immunity by voluntarily removing an action to federal court when it would have been immune from the state-law claims in state court.[4]  *Id*. at 490-91.  In so deciding, the Fourth Circuit concluded that the "voluntary invocation" principle was limited to cases in which the state sought "to *regain* immunity that it had abandoned previously."  *Id*. at 490.  The Fourth Circuit also determined that long-standing principles of state sovereign immunity prohibited "waiver-by-removal" when the state had not consented to suit in its own courts.  *Id*. at 488.

The court finds the crux of the reasoning in *Stewart* persuasive and believes that it forms the basis of a "waiver-by-removal" rule that can be applied to all state and federal claims: When a state voluntarily invokes the jurisdiction of a federal court through removal, it may not "regain immunity that it had abandoned previously."  *Id*. at 490 (emphasis omitted).  The court does not necessarily agree with every aspect of *Stewart*.  For instance, the Fourth Circuit distinguished "the related but not identical concepts of Eleventh Amendment immunity and state sovereign immunity."  *Id*. at 487.  However, the Supreme Court's decision in *Alden* emphasized "that there is no such thing as an Eleventh Amendment immunity separate and apart from state sovereign immunity, that a state's sovereign immunity from suit is now and always has been inherent within its sovereignty."  *Meyers v. Benning*, __

---

[4]Although the plaintiff in *Stewart* brought a § 1983 claim, the Fourth Circuit's "waiver-by-removal" analysis was limited to state-law claims in which the state had not expressly waived its immunity. *Stewart*, 393 F.3d at 487, 490-91.

F.3d __, 2005 WL 1178010, at *12 (5th Cir. May 19, 2005). Nevertheless, this concept from *Alden* provides even further support for the notion that whatever immunity a state enjoyed in state court remains with it after removal to federal court. Stated differently, when a state defendant removes a case to federal court, the federal court should be permitted "to hear any claim against the defendant that might have been heard in the state court from which the case was removed. [Removal] should not . . . waive the defendant's immunity from any claims from which it would have been immune in state court." Jonathan R. Siegel, *Waivers of State Sovereign Immunity and the Ideology of the Eleventh Amendment*, 52 Duke L.J. 1167, 1235 (2003) (cited with approval by the Fifth Circuit in *Meyers*). This is the "waiver-by-removal" rule that the court will apply in the case at hand.

### B. Plaintiff's State-law Claims

Plaintiff's state-law claims that are addressed in Defendants' motion to dismiss are contained in Counts I, II, III, IV, and VI of Plaintiff's Second Amended Complaint. These claims are for defamation, wrongful discharge in violation of public policy, intentional infliction of emotional distress, breach of implied contract, and violations of the PHRA respectively. Defendants assert that these claims should be dismissed for the following reasons. First, Plaintiff's claims in Counts I, II, and III are barred by state sovereign immunity. Second, Plaintiff fails to properly allege the existence of an implied employment contract in Count IV. Finally, Plaintiff's PHRA claims in Count VI against the Department and the OVR as well as against Mr. Nasuti and Secretary Schmerin in their official capacities are barred by the Eleventh Amendment. The court will address these arguments below.

### 1. Counts I, II, III, and IV

13

Under Pennsylvania law, the Commonwealth and its officials acting within the scope of their duties "enjoy sovereign immunity" and are "immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. Cons. Stat. Ann. § 2310 (West Supp. 2005). The Pennsylvania legislature has waived the Commonwealth's sovereign immunity in nine categories: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. Cons. Stat. Ann. § 8522(b) (1998). In accordance with the court's reasoning above regarding "waiver-by-removal," *see supra* Part III.A., Plaintiff's state-law claims would be barred by Pennsylvania's sovereign immunity to the extent that they do not fall within these nine exceptions.

Plaintiff's defamation claims in Count I do not fall within any of the nine exceptions and are therefore barred by sovereign immunity. *See Yakowicz v. McDermott*, 548 A.2d 1330, 1334 (Pa. Commw. Ct. 1988). Likewise, Plaintiff's claims for wrongful discharge in violation of public policy in Count II are not included in the enumerated exceptions in § 8522(b). *See McNichols v. Pa. Dep't of Transp.*, 804 A.2d 1264, 1267 (Pa. Commw. Ct. 2002). Finally, Plaintiff's claims of intentional infliction of emotional distress in Count III are also barred by Pennsylvania's sovereign immunity because liability for intentional torts is not included in the nine exceptions. *See Pickering v. Sacavage*, 642 A.2d 555, 559-60 (Pa. Commw. Ct. 1994). Sovereign immunity applies to Plaintiff's claims of intentional infliction of emotional distress even though she brought the claim only

against Mr. Nasuti.  *Id.* at 560.  Pennsylvania's sovereign immunity extends to "officials and employees acting within the scope of their duties."  1 Pa. Cons. Stat. Ann. § 2310.  All of Plaintiff's allegations against Mr. Nasuti in Count III occurred while he was acting within the scope of his employment.  Thus, the claims in Count III are barred by sovereign immunity.

As for Plaintiff's breach of implied contract claims in Count IV, Defendants do not assert that they are barred by Pennsylvania's sovereign immunity statute.  However, because a claim of this nature does not fall under any of the nine exceptions set forth in § 8522(b), the court concludes that the claim is barred by Pennsylvania's sovereign immunity.  The court is unaware of any Pennsylvania court that has made this precise ruling, but a claim for breach of an implied contract, or any contract for that matter, is not included within the plain language of the nine exceptions.  *See* 42 Pa. Cons. Stat. Ann. § 8522(b).  The scope of Pennsylvania's waiver of immunity only extends to suits based on negligent acts.  *Id*. § 8522(a).  Because Plaintiff's breach of implied contract claim is barred by sovereign immunity, the court will not address Defendants' other arguments on this issue.

## 2.    Plaintiff's PHRA Claims Under Count VI

Defendants assert that the Eleventh Amendment applies to Plaintiff's PHRA claims.  Although claims under the PHRA are not included in the enumerated exceptions in § 8522(b), several courts have determined that Pennsylvania has nonetheless waived its immunity from suit under the PHRA in light of the language of the statute itself.  *See, e.g., Dennison v. Pa. Dep't of Corr.*, 268 F. Supp. 2d 387, 405 (M.D. Pa. 2003) (citing *Mansfield State Coll. v. Kovich*, 407 A.2d 1387, 1388 (Pa. Commw. Ct. 1979)); *Tyrrell v. City of Scranton*, 134 F. Supp. 2d 373, 384

(M.D. Pa. 2001) (same).  The PHRA prohibits any "employer" from discriminating against a person with a disability in making certain employment decisions.  43 Pa. Cons. Stat. Ann. § 955(a) (West Supp. 2005).  The statute's definition of "employer," however, includes the Commonwealth.  *Id*. § 954(b).  Pennsylvania courts have interpreted the PHRA's inclusion of the Commonwealth under the definition of "employer" to mean that it waived its sovereign immunity for PHRA claims.  *City of Phila. v. Pa. Human Relations Comm'n*, 684 A.2d 204, 208 (Pa. Commw. Ct. 1996) (citing *Mansfield*).

Despite the Commonwealth's waiver of immunity under the PHRA, federal district courts in Pennsylvania have consistently concluded that the state has not waived its Eleventh Amendment immunity from suit in federal court.  *Dennison*, 268 F. Supp. 2d at 405; *Moore v. Pa. Dep't of Military & Veteran Affairs*, 216 F. Supp. 2d 446, 454 (E.D. Pa. 2002).  Nevertheless, in light of the court's "waiver-by-removal" reasoning, *see supra* Part III.A., the court concludes that Pennsylvania has waived its sovereign immunity from suit under the PHRA in federal court.  Indeed, this situation falls squarely within the Supreme Court's holding in *Lapides*.  Pennsylvania is prohibited from asserting immunity in federal court on a state-law claim in which it expressly waived its immunity by statute.  *See Lapides*, 535 U.S. at 617.  Thus, Plaintiff's claims under the PHRA are not barred by sovereign immunity because Defendants waived their immunity from suit on this claim by removing the case to federal court.

### C.     Plaintiff's Federal Law Claims

Plaintiff brought federal law claims under § 1983 in Count V, the ADA in Count VI, and for Conspiracy to Violate § 1983 in Count VIII.  The court will address Defendants' arguments with respect to each of these claims below.

### 1.   Count V: Section 1983

Plaintiff brought § 1983 claims against the Department and the OVR as well as against Mr. Nasuti and Secretary Schmerin in their individual capacities. Plaintiff alleges that Defendants deprived her "of her liberty interest in her reputation under color of law without due process."  (Second Am. Compl. ¶ 85.)  Essentially, Plaintiff's § 1983 claims are based on the "stigma-plus" or "reputation-plus" cases that originated in the Supreme Court's decision in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972).  In order to establish such a claim, "a plaintiff must show a stigma to [her] reputation plus some concomitant infringement of a protected right or interest."  *Ersek v. Township of Springfield*, 102 F.3d 79, 83 n.5 (3d Cir. 1996).

Defendants contend that Plaintiff's § 1983 claims should be dismissed for the following reasons.  First, Plaintiff fails to allege stigmatizing conduct or a tangible loss to support her "stigma-plus" claims.  Second, the Department and the OVR and Mr. Nasuti and Secretary Schmerin in their official capacities are not "persons" within the meaning of § 1983.  Third, the Eleventh Amendment bars Plaintiff's § 1983 claims against the Department and the OVR.  The court will address each of these arguments in turn.[5]

---

[5]Defendants also assert that to the extent Plaintiff asserted a § 1983 claim based solely on defamation, that claim must fail.  The Supreme Court has held that "reputation alone, apart from some more tangible interests such as employment," is not a liberty or property interest that is "sufficient to invoke the

(continued...)

### a. **Insufficient Support for a "Stigma-Plus" Claim**

As the name implies, in order to make out a "stigma-plus" claim, a plaintiff must demonstrate a "stigma" and a "plus."  A "stigma" involves government action that infringes upon "a person's good name, reputation, honor, or integrity." *Roth*, 408 U.S. at 573; *Ersek*, 102 F.3d at 83-84.  "What satisfies the 'plus,' however, is uncertain."  *Ersek*, 102 F.3d at 83 n.5.  Generally, the "plus" is a termination of employment.  *Graham v. City of Phila.*, 402 F.3d 139, 142 n.2 (3d Cir. 2005).

Defendants argue that Plaintiff has failed to sufficiently allege a "stigma" or a "plus."  Defendants assert that Plaintiff "has not alleged any statements sufficiently 'stigmatizing' to implicate her liberty interest in her reputation."[6]  (Defs.' Br. Supp. Mot. Dismiss at 12.)  Plaintiff's allegations only relate to comments on her unsatisfactory performance, Defendants contend, and they do not constitute the kind of materially false statements, such as those invoking dishonesty and immorality, required to implicate a person's liberty interests.  Likewise, Defendants assert that Plaintiff does not allege any tangible loss of employment opportunity that could

---

[5](...continued)
procedural protection of the Due Process Clause." *Paul v. Davis*, 424 U.S. 693, 701 (1976).  Thus, Plaintiff may not, as a matter of law, pursue a § 1983 claim based on reputation or defamation alone.  Because Plaintiff cites *Paul* for the same proposition, the court concludes that she does not disagree with this result and instead intended to rely solely on a "stigma-plus" claim, which could provide a valid basis for a § 1983 cause of action. *See Ersek*, 102 F.3d at 83 n.5 (recognizing "stigma-plus" claims).

[6]Procedural due process requirements only apply to "the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Roth*, 408 U.S. at 569.  Plaintiff's "stigma-plus" allegations sound in deprivations of her liberty interests. *See id.* at 572-75.  Defendants assert that Plaintiff has failed to demonstrate a protected property interest in her job because she was an at-will employee. This may be so, and the Supreme Court's reasoning in *Roth* would certainly support this argument. *See id.* at 577.  However, Plaintiff does not allege that her property interests were violated.  (*See* Second Am. Compl. ¶ 85.)  Thus, the court need only view Plaintiff's § 1983 claims as alleged violations of her liberty interests.

qualify as a "plus."  Defendants argue that Plaintiff did not allege that the "stigmatizing" conduct prevented her from pursuing her career or caused her to lose out on a specific job opportunity.

The court finds Defendants' arguments to be ill-founded.  Plaintiff alleges that following her termination, numerous members of the blind community protested.  (Second Am. Compl. ¶ 56.)  Plaintiff also alleges that in response to the uproar, the Department along with the OVR issued statements in response, including one saying that the termination was justified by "compelling, performance-based reasons involving behavior unacceptable from an employee – especially from an employee in a policy-making position as the one [Plaintiff] held."  (*Id*.; Second Am. Compl., Ex. 7 at 2.)  Viewing the allegations in Plaintiff's Second Amended Complaint as true and drawing reasonable inferences in Plaintiff's favor, *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003), the court concludes that these allegations could form the basis of a valid claim that would entitle Plaintiff to relief.  Plaintiff need not plead her § 1983 claims with specificity, and having satisfied the liberal pleading standard of Federal Rule of Civil Procedure 8(a), she should be allowed to pursue discovery mechanisms to further develop her claims.  *Alston v. Parker*, 363 F.3d 229, 233, 233 n.6 (3d Cir. 2004).

As for Defendants' assertion that Plaintiff's allegations do not involve accusations of dishonesty or immorality, the court concludes that "stigma-plus" claims are not strictly limited to such statements.  In *Roth*, the Supreme Court offered these kinds of accusations as an example of what might constitute a "stigma."  *Roth*, 408 U.S. at 573; *Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1371 (11th Cir. 1982) (noting that the Supreme Court's reference to dishonesty and immorality in

*Roth* were "obviously intended as an example, and not as a limitation on the kind of charges that might implicate liberty interests"). In Third Circuit cases interpreting *Roth*, accusations of dishonesty and immorality have not been viewed as a threshold for stating a "stigma-plus" claim. *See, e.g., Ersek*, 102 F.3d at 83-84. Defendants do not offer any Third Circuit case with a contrary position. In short, the court finds that Plaintiff has sufficiently pled the "stigma" component of her "stigma-plus" claim.

With respect to Defendants' argument that Plaintiff failed to allege "a tangible loss of employment opportunities," (Defs.' Br. Supp. Mot. Dismiss at 14), the court finds this assertion unconvincing for a variety of reasons. First, Plaintiff is not required to plead specific facts in her complaint. *Alston*, 363 F.3d at 233, 233 n.6. Second, Plaintiff alleges that she unsuccessfully sought other employment for several months following her termination and eventually had to take a less desirable position. (Second Am. Compl. ¶ 66.) These allegations are sufficient to endure a motion to dismiss. Finally, although what constitutes a "plus" is uncertain, a termination of employment will typically satisfy the requirement. *Graham*, 402 F.3d at 142 n.2; *Ersek*, 102 F.3d at 83 n.5. Plaintiff has alleged that the "stigmatizing" conduct in this case occurred in relation to her termination. Thus, she has sufficiently pled the "plus" element of her § 1983 claim for purposes of surviving a motion to dismiss. In sum, the court rejects Defendants' argument that Plaintiff has not sufficiently alleged a "stigma-plus" claim.

### b.    "Persons" Under § 1983

Defendants contend that Plaintiff's § 1983 claim should be dismissed because the Department and the OVR as well as Mr. Nasuti and Secretary Schmerin

20

are not "persons" within the meaning of § 1983.  Relying on the plain language of § 1983 and Congress's intent in enacting the statute, the Supreme Court has held that a state and state officers acting in their official capacities are not "persons" against whom a claim for money damages under § 1983 can be asserted.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 71 n.10 (1989).  The Department, the OVR, and Mr. Nasuti and Secretary Schmerin in their official capacities fall within this holding of *Will*.  To the extent that Plaintiff brought § 1983 claims against Mr. Nasuti and Secretary Schmerin in their individual capacities, however, those claims remain viable.  *See Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("We hold that state officials, sued in their individual capacities, are "persons" within the meaning of § 1983.").

Plaintiff does not dispute this result.  Instead, Plaintiff asserts that even though states and state officials cannot be sued for monetary damages under § 1983, they can be sued for injunctive relief.  In *Will*, the Supreme Court noted that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' "  *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) and citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)).  The Supreme Court's limitation of its holding in *Will* does not extend as far as Plaintiff suggests.  Plaintiff argues that her § 1983 claims for injunctive relief are valid against *all* of the defendants.  The language in *Will*, however, only applies to "a *state official* in his or her official capacity."  *Will*, 491 U.S. at 71 n.10 (emphasis added).  Thus, Plaintiff's § 1983 claims for injunctive relief against the Department and the OVR are barred under the broader holding of *Will*.

Even though Plaintiff is correct in asserting that a state official can be sued in his or her official capacity for injunctive relief under § 1983, the court notes that Plaintiff specifically brought her § 1983 claims against Mr. Nasuti and Secretary Schmerin "in their individual capacities." (Second Am. Compl. at 25, Count V Heading.) Plaintiff named Secretary Schmerin in his official capacity in the caption of the Second Amended Complaint; therefore, the court can easily discern Plaintiff's intention to name him in his official capacity under her § 1983 claims. In contrast, Plaintiff only names Mr. Nasuti as "an individual" in the caption. (Second Am. Compl. at 1.) The court is unclear as to whether this evinces Plaintiff's desire to sue Mr. Nasuti solely in his individual capacity. Regardless, in light of the ambiguity and given the fact that both parties raise arguments as if Mr. Nasuti was sued in his official capacity, the court will construe Plaintiff's § 1983 claims as if they were brought against Mr. Nasuti in both his official and individual capacities.

In sum, Plaintiff's § 1983 claims against the Department and the OVR will be dismissed in their entirety. To the extent Plaintiff intended to seek money damages against Mr. Nasuti and Secretary Schmerin in their official capacities under § 1983, those claims will be dismissed as well. However, Plaintiff's § 1983 claims for injunctive relief against Mr. Nasuti and Secretary Schmerin in their official capacities will survive the instant motion to dismiss. Finally, Plaintiff's § 1983 claims against Mr. Nasuti and Secretary Schmerin in their individual capacities remain viable in all respects.

### c.    **Defendants' Immunity from § 1983 Claims**

Given the resolution of Defendants' arguments regarding Plaintiff's § 1983 claims under *Will*, the court need not address the merits of whether Defendants

enjoy immunity from Plaintiff's § 1983 claims.  To the extent that Defendants would have enjoyed sovereign immunity from suit on these claims in state court, that immunity would not provide them any greater protection than what *Will* and its progeny provide, if indeed immunity would apply at all.  Thus, the court will not address Defendants' immunity arguments with respect to Plaintiff's § 1983 claims.

### 2.   Count VI: Plaintiff's ADA Claims

Defendants assert that Plaintiff's ADA claims for money damages against the Department and the OVR ("the Commonwealth Defendants") are barred by the Eleventh Amendment.  Given the court's conclusion regarding "waiver-by-removal," the court will analyze Defendants' argument from the perspective that the Commonwealth Defendants enjoy as much sovereign immunity in this case as they would have enjoyed in state court.  *See supra* Part III.A.  To the extent that the Department and the OVR would not have been immune from suit under the ADA in state court, their immunity from suit in federal court has been waived.  *Id*.

Determining the extent of the Commonwealth Defendants' immunity from ADA claims in state court is not entirely clear.  Certainly, a plaintiff could seek relief under the ADA in a Pennsylvania state court.  The Supreme Court has consistently held that " 'state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.' "  *Nevada v. Hicks*, 533 U.S. 353, 366 (2001) (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)).  No Pennsylvania court, however, has specifically ruled on the issue of whether the Commonwealth is immune from suit under the ADA in state court.  *Cf. Johnson v. Pa. Dep't of Transp.*, 805 A.2d 644, 648 (Pa. Commw. Ct. 2002) (having the argument presented to it, but finding no need to address the issue

because the case could be resolved on other grounds).[7]  Nevertheless, the kind of

claims protected by the ADA do not fall within the nine exceptions to Pennsylvania's

sovereign immunity established by its legislature.  *See* Pa. Cons. Stat. Ann. § 8522(b)

(1998).  Further, Pennsylvania has made it clear that its consent to suit is strictly

limited to the nine exceptions.  *See id.* §§ 8521(a), 8522(b).  Thus, the court

concludes that Pennsylvania has not waived its immunity from suit under the ADA.

This conclusion is supported by the general principles of the Supreme

Court's decision in *Alden v. Maine*, 527 U.S. 706 (1999).  In *Alden*, the Supreme

Court held "that the powers delegated to Congress under Article I of the United

States Constitution do not include the power to subject nonconsenting States to

private suits for damages in state courts."  *Id.* at 712.  Congress passed the ADA

under its Article I authority.  42 U.S.C. § 12101(b)(4) (2003).  Therefore,

Pennsylvania's immunity from suit in state court under the ADA remains intact.

*Alden*, 527 U.S. at 712.  The *Alden* Court recognized that "certain limits are implicit

in the constitutional principle of state sovereign immunity."  *Id.* at 755.  Relevant to

the instant matter is the limitation that Congress may abrogate a state's sovereign

immunity in accordance with its enforcement powers under the Fourteenth

Amendment.  *See* U.S. Const. amend. XIV, § 5.  Congress also passed the ADA

under its § 5 powers, 42 U.S.C. § 12101(b)(4); however, the Supreme Court has held

that Congress did not validly abrogate states' immunity from suit for money damages

under Title I of the ADA through its § 5 authority.  *Bd. of Trs. of the Univ. of Ala. v.*

---

[7]In fact, not many state courts have addressed the issue, presumably because ADA claims are usually brought in federal court.  The court could find only one case that addressed the precise issue at hand. *See Schall v. Wichita State University*, 7 P.3d 1144, 1151-1153 (Kan. 2000).  In *Schall*, the Kansas Supreme Court held that the State of Kansas enjoyed sovereign immunity from suit under the ADA even when the claims were brought in state court.  *Id.* at 1153.

*Garrett*, 531 U.S. 356, 360 (2001).  In short, Supreme Court precedent lends support to the conclusion that the Commonwealth Defendants would have been immune from suit under the ADA in state court.  Thus, the court concludes that Plaintiff's ADA claims against the Commonwealth Defendants are barred by Pennsylvania's sovereign immunity.

Before addressing Defendants' next argument regarding Plaintiff's ADA claims, the court finds it necessary to clarify two points.  First, Defendants assert that the Commonwealth Defendants are immune from suit under the ADA for money damages, but not for injunctive relief.  The court believes this assertion is incorrect.  In *Garrett*, the Supreme Court noted that even though private individuals could not obtain monetary relief against states under Title I of the ADA, they could still seek injunctive relief under *Ex Parte Young*.  *Garrett*, 531 U.S. at 374 n.9.  *Ex Parte Young*, however, only applies to state officials in their official capacities.  *Ex Parte Young*, 209 U.S. 123, 159-60 (1908).  In fact, the core reasoning of *Ex Parte Young* is that "a suit challenging the constitutionality of a state official's action in enforcing state law is not [a suit] against the State."  *Green v. Mansour*, 474 U.S. 64, 68 (1985).  Thus, the Commonwealth Defendants enjoy immunity from suit for both monetary and injunctive relief under Plaintiff's ADA claims.

The second point requiring clarification is that Defendants' immunity argument was limited to the Commonwealth Defendants and did not address whether Mr. Nasuti and Secretary Schmerin enjoy immunity.  For the same reasons as stated above, the court concludes that Plaintiff's ADA claims for money damages against Mr. Nasuti and Secretary Schmerin in their official capacities are barred.  Because Pennsylvania has not waived its immunity from suit under the ADA in state court, Mr.

25

Nasuti and Secretary Schmerin would have been immune from suit under the ADA for money damages in their official capacities.  To the extent that Plaintiff is seeking injunctive relief under the ADA against Mr. Nasuti and Secretary Schmerin in their official capacities, those claims remain.  *See Ex Parte Young*, 209 U.S. 123 (1908).

Defendants next argue that Mr. Nasuti and Secretary Schmerin can *only* be sued under Title I of the ADA for injunctive relief in their official capacities.  The Third Circuit has noted that "there appears to be no individual liability for damages under Title I of the ADA" because the statute is limited to "employers" with fifteen or more employees.  *Koslow v. Pennsylvania*, 302 F.3d 161, 177-78 (3d Cir. 2002); *see also McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 398 (E.D. Pa. 2002) (confirming that this is the "consensus view" among district courts in the Third Circuit).  Plaintiff does not provide any contrary authority.  Thus, the court finds that Plaintiff's ADA claims for money damages against Mr. Nasuti and Secretary Schmerin in their individual capacities must fail.  Because individuals may be sued in their official capacities under the ADA for prospective injunctive relief, *Koslow*, 302 F.3d at 177-78, Plaintiff's claims of this nature survive Defendants' motion to dismiss.

In sum, Plaintiff's ADA claims against the Commonwealth Defendants are dismissed in their entirety.  Plaintiff's ADA claims for monetary relief against Mr. Nasuti and Secretary Schmerin in their official and individual capacities will be dismissed.  Plaintiff's ADA claims for injunctive relief against Mr. Nasuti and Secretary Schmerin in their official and individual capacities remain viable.

### c.      Count VIII: Conspiracy to Violate § 1983

Defendants argue that Plaintiff's conspiracy claim should be dismissed for two reasons.  First, Plaintiff did not demonstrate that she was deprived of any right protected by § 1983.  Second, Plaintiff did not sufficiently plead the existence of a conspiracy.  For the reasons set forth below, the court finds both of these arguments unpersuasive.

Defendants' first argument is based on their previous assertion that Plaintiff failed to sufficiently state a claim under § 1983.  The court has already addressed this argument and found its merits lacking in certain respects.  *See supra* Part III.C.1.  Plaintiff's § 1983 claims for injunctive relief against Mr. Nasuti and Secretary Schmerin in their official and individual capacities and for monetary relief in their individual capacities remain in the case.  Thus, Plaintiff still has an underlying claim on which to base her allegations of a conspiracy to violate § 1983.  However, the court found that Plaintiff's § 1983 claims against the Department and the OVR must fail as a matter of law.  Because Plaintiff no longer has a valid § 1983 claim against the Department and the OVR, Plaintiff's conspiracy to violate § 1983 claims can only proceed against Mr. Nasuti and Secretary Schmerin.

Defendants also assert that Plaintiff must allege her conspiracy claim with particularity.  Although courts may have required a heightened pleading standard for conspiracy claims at one time, the court concludes that such a requirement no longer exists.  The current trend is to apply the liberal notice pleading standard of Federal Rule of Civil Procedure 8.  *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).  In *Leatherman*, the Supreme Court held that civil rights claims brought under 42 U.S.C. § 1983 did not have to be pled with specificity.  *Id*. at 168.  The Supreme Court recently reaffirmed

the *Leatherman* Court's endorsement of the notice pleading standard in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). In *Swierkiewicz*, the Supreme Court held that "Rule 8(a)'s simplified pleading standard applies to *all* civil actions, with limited exceptions."[8] *Id.* at 513 (emphasis added); *see also Alston v. Parker*, 336 F.3d 229, 233 (3d Cir. 2004) (relying on the same principle from *Swierkiewicz*). In short, the court concludes that Plaintiff's conspiracy to violate § 1983 claims do not need to be pled with particularity, and these claims will survive Defendants' motion to dismiss with respect to Mr. Nasuti and Secretary Schmerin.[9]

## IV.        Conclusion

In accordance with the foregoing, the court will grant Defendants' partial motion to dismiss in part and deny it in part. Defendants' motion will be granted with respect to Plaintiff's (1) defamation claims in Count I, (2) wrongful discharge in violation of public policy claims in Count II, (3) intentional infliction of emotional distress claims in Count III, (4) breach of implied contract claims in Count IV, (5) § 1983 claims for injunctive and monetary relief against the Department and the OVR in Count V, (6) § 1983 claims for monetary relief against Mr. Nasuti and Secretary Schmerin in their official capacities in Count V, (7) ADA claims for injunctive and monetary relief against the Department and the OVR in Count VI, (8) ADA claims for monetary relief against Mr. Nasuti and Secretary Schmerin in their official and individual capacities in Count VI, and (9) conspiracy to violate § 1983 claims against

---

[8]The only exception the Supreme Court noted was Rule 9(b), which provides for greater particularity in cases involving fraud or mistake. *Swierkiewicz*, 534 U.S. at 513.

[9]The court is aware that Plaintiff has also named other unknown coconspirators. For the time being, these claims remain in the case as well.

the Department and the OVR.  Defendants' motion will be denied in all other respects.  The following claims remain viable: (1) Plaintiff's PHRA claims in Counts VI and VII, (2) Plaintiff's § 1983 claims for injunctive relief against Mr. Nasuti and Secretary Schmerin in their official capacities in Count V, (3) Plaintiff's § 1983 claims for both injunctive and monetary relief against Mr. Nasuti and Secretary Schmerin in their individual capacities in Count V, (4) Plaintiff's ADA claims for injunctive relief against Mr. Nasuti and Secretary Schmerin in their official and individual capacities in Count VI, and (5) Plaintiff's conspiracy to violate § 1983 claims against Mr. Nasuti and Secretary Schmerin in Count VIII.  An appropriate order will issue.[10]

s/Sylvia H. Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated:  June 6, 2005.

---

[10]To the extent the court will dismiss Plaintiff's claims, the court will not allow Plaintiff leave to amend.  The dismissed claims could not be cured through amendment of the complaint; therefore, amendment would be futile.  *Alston v. Parker*, 336 F.3d 229, 236 (3d Cir. 2004).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


**CHRISTINE BOONE,**                      :       **CIVIL NO. 1:CV-04-0588**

     **Plaintiff**               :

    **v.**                           :

**PENNSYLVANIA OFFICE OF**           :
**VOCATIONAL REHABILITATION,**
**an agency of the Commonwealth of**   :
**Pennsylvania; PENNSYLVANIA**
**DEPARTMENT OF LABOR AND**          :
**INDUSTRY, an agency of the**
**Commonwealth of Pennsylvania;**       :
**STEPHEN NASUTI, an individual;**
**STEPHEN SCHMERIN, Secretary of**     :
**Labor and Industry; STEPHEN**
**SCHMERIN, an individual; and**        :
**UNNAMED COCONSPIRATORS,**

     **Defendants**            :


# O R D E R

  In accordance with the accompanying memorandum of law, **IT IS**

**HEREBY ORDERED THAT**:

   1) Defendants' partial motion to dismiss (Doc. 56) is **GRANTED in**

**part** and **DENIED in part** as follows:

    a) Defendants' motion is **GRANTED** with respect to Plaintiff's

following claims:

     i.) defamation in Count I,

ii.) wrongful discharge in violation of public policy in Count II,

iii.)  intentional infliction of emotional distress in Count III,

iv.) breach of implied contract in Count IV,

v.) § 1983 claims for injunctive and monetary relief against the Department and the OVR in Count V,

vi.) § 1983 claims for monetary relief against Mr. Nasuti and Secretary Schmerin in their official capacities in Count V,

vii.) ADA claims for injunctive and monetary relief against the Department and the OVR in Count VI,

viii.) ADA claims for monetary relief against Mr. Nasuti and Secretary Schmerin in their official and individual capacities in Count VI, and

ix.) conspiracy to violate § 1983 claims against the Department and the OVR.

b.) The above claims are **DISMISSED** from the case.

c.) Defendants' motion is **DENIED** in all other respects.

2.) The following claims remain viable in this case:

a.) Plaintiff's PHRA claims in Counts VI and VII,

b.) Plaintiff's § 1983 claims for injunctive relief against Mr. Nasuti and Secretary Schmerin in their official capacities in Count V,

c.) Plaintiff's § 1983 claims for both injunctive and monetary relief against Mr. Nasuti and Secretary Schmerin in their individual capacities in Count V,

d.) Plaintiff's ADA claims for injunctive relief against Mr. Nasuti and Secretary Schmerin in their official and individual capacities in Count VI, and

       e.) Plaintiff's conspiracy to violate § 1983 claims against Mr.

Nasuti and Secretary Schmerin in Count VIII.

                                s/Sylvia H. Rambo
                                SYLVIA H. RAMBO
                                United States District Judge

Dated:  June 6, 2005.

3