IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**CHRISTINE BOONE,**  :  **CIVIL NO. 1:CV-04-0588**
  :
  **Plaintiff,**  :  **JUDGE SYLVIA H. RAMBO**
  :
  :
  **v.**  :
  :
  :
**PENNSYLVANIA OFFICE OF**  :
**VOCATIONAL REHABILITATION,**  :
*et al.*,  :
  :
  **Defendants.**  :
  :

**M E M O R A N D U M**

Before the court is Defendants' Motion for Summary Judgment (Doc. 98). Plaintiff filed suit against Defendants on eight counts. Defendants previously filed a Motion to Dismiss, which the court granted in part and denied in part. Defendants have now moved for summary judgment on all remaining claims. The parties have briefed the issues and the matter is now ripe for disposition. For the reasons set forth below, the court will grant in part and deny in part Defendants' motion for summary judgment.

I.       **Background**

   A.      **Factual Background**

The following facts are undisputed except where noted.[1] In or about May 2000, Plaintiff, who is blind, was hired as the Director of the Pennsylvania

---

[1] Plaintiff's response to Defendants' statement of undisputed facts (*see* Doc. 103-1) includes a number of objections to the characterizations of documents while admitting to the authenticity of the underlying exhibits. To the extent that Defendants' references to the documents are consistent with the content of the exhibits, the court will consider the corresponding facts to be undisputed.

Bureau of Blindness & Visual Services ("BBVS").  (Defs.' Statement of Undisputed Facts ¶ 1.)  BBVS is one of a group of bureaus in the Office of Vocational Rehabilitation ("OVR"), which is a component of the Pennsylvania Department of Labor and Industry ("the Department").  (*Id.* ¶¶ 6, 7.)

Plaintiff reported to Stephen Nasuti, the Executive Director of OVR. (*Id.* ¶ 4.)  While Plaintiff was serving as Director of BBVS, Stephen Schmerin became the Secretary of the Department and, as such, Mr. Nasuti's direct supervisor. (*Id.* ¶¶ 4, 5.)

### 1.   <u>Plaintiff's Dismissal</u>

On August 14, 2003, Plaintiff was dismissed as Director of BBVS.  (*Id.* ¶ 17.)  Plaintiff was an appointed official and thus an at-will employee who did not have an employment contract.  (*Id.* ¶ 3.)  The dismissal letter, which was signed by Secretary Schmerin, cited "insubordination, lack of cooperation," concern about whether Plaintiff would carry out Department policies, and Plaintiff's lack of required skills, as reasons for the dismissal.  (Defs.' Mot. for Summ. J. Ex. 2.)  The letter also specifically referenced the following: a) Plaintiff's refusal to follow or implement an OVR policy; b) a "two-week, unpaid, disciplinary suspension" for "among other things, [Plaintiff's] failure to follow departmental procurement protocols"; and c) Plaintiff's receipt of two letters regarding her "failure to follow other protocols or exercise good judgment."  (*Id.*)

Plaintiff was required to leave at the end of the day on August 14th and was not permitted to access any of her computer files after Defendants informed her of her dismissal.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. 9, Ex. 2 ¶¶ 122-25.)  She was able to notify some staff members and others before she left, but most OVR

employees learned of her departure via a one-sentence notification in an e-mail sent on behalf of Mr. Nasuti.  (*Id.* Ex. 22.)  After Plaintiff's dismissal, her office was sealed off with yellow crime tape.  (Buzzanco Dep. at 5.)

Following her termination, Plaintiff experienced difficulty securing other employment.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. Ex. 2 ¶ 134; C. Boone Dep. at 162-63.)  In April 2004, Plaintiff found a part-time position as Director of Legal Affairs and Training for the Blind Industries & Services of Maryland.  (Defs.' Mot. for Summ. J. Ex. 19 at 8.)  In this position, Plaintiff earns less money and commutes to Baltimore from her home in Pennsylvania.  (*Id.* at Ex. 19 at 8-17.)

### a.    <u>The OVR Policy</u>

On June 4, 2003, Plaintiff sent an e-mail to Susan Benbow, an official with the federal Rehabilitation Services Administration, seeking advice about a proposed OVR policy.  (*Id.* at Ex. 6.)  Specifically, Plaintiff inquired about the nature of merit scholarships and whether OVR could deduct them from amounts paid towards college tuition.  (*Id.*)  Plaintiff attached to the e-mail a May 20, 2003 memorandum ("College Policy Memorandum") that contained Catherine Wojciechowski's[2] legal opinion on the same issue.  (*Id.* at Ex. 4.)  The words "Privileged and Confidential Attorney Work Product" appeared in bold lettering on the top of the front page of the College Policy Memorandum.  (*Id.*)  Plaintiff does not dispute that she intentionally sent the College Policy Memorandum to Ms. Benbow (Defs.' Statement of Undisputed Facts ¶ 11); however, she states that she reads documents through translating software, and does not recall whether she was aware

---

[2]  Catherine Wojciechowski is an attorney in the Department's Office of Chief Counsel.  (Defs.' Mot. for Summ. J. ¶ 9.)

of the "privileged and confidential" language when she sent the e-mail (Pl.'s Statement of Mat'l Facts ¶ 10).

On July 29, 2003, Plaintiff exchanged e-mails with OVR employee Andrew Chopak regarding her request that certain policy language[3] be deleted from an OVR training memorandum, OVR Numbered Memorandum 03-200.01.  (Defs.' Mot. for Summ. J. ¶ 13, Exs. 5, 7.)  Mr. Chopak told Plaintiff that Mr. Nasuti had approved the language.  (*Id.* at Ex. 7.)  Ultimately, Plaintiff stated that she would not sign the memorandum and indicated that Mr. Nasuti would have to sign in her place if the policy language were not removed.  (*Id.*)

Mr. Nasuti cited Plaintiff's July 29, 2003 refusal "to follow or implement" the policy in an August 12, 2003 memorandum to Secretary Schmerin, in which Mr. Nasuti recommended Plaintiff's dismissal.  (*Id.* at Ex. 3.)  However, Mr. Nasuti stated in his March 2005 deposition that OVR had delayed implementing the policy, which was "on hold" at the time of his retirement.  (Nasuti Dep. at 139.)

### b.    The Two-Week Disciplinary Suspension

Plaintiff was suspended without pay from June 30 through July 14, 2003, for planning a meeting and contracting for services with the Harrisburg Hilton and Towers ("Hilton") without authorization.  (Defs.' Mot. for Summ. J. Ex. 8.) Plaintiff's suspension letter, dated June 23, 2003, noted Plaintiff's failure to fully review the terms and conditions of the Hilton contract before signing it and her failure to follow Procurement Code provisions for contracting for services or obtaining proper authorization.  (*Id.*)  The letter also noted her failure to inform her superiors

---

[3]  The policy language at issue provides: "OVR customers may not be required to seek merit scholarships; however, if the customer receives a merit scholarship, the FAO will report it and the counselor will use it in calculating OVR's contribution."  (*Id.* at Exs. 5, 7.)

about the contract, her plans to close the office for three business days to conduct the meeting, or about the meeting at all until two weeks before its scheduled date, which was September 4-6, 2002.  (*Id.*)

The facts concerning whether Plaintiff followed proper contracting procedure appear to be somewhat in dispute.  Plaintiff maintains in an affidavit that her method of contracting was consistent with OVR staff advice (Pl.'s Statement of Mat'l Facts, Ex. 2 ¶ 94), although she has admitted that she did not fully review the contract before signing it.  (Defs.' Mot. for Summ. J. Ex. 9.)

In addition, the facts regarding whether Plaintiff provided notice to Mr. Nasuti regarding the meeting prior to August 2002 are in dispute.  On April 17, 2003, Lisa Sanno, Chief of the Department's Labor Relations Division, conducted a fact finding regarding the Hilton contract and Plaintiff's plans for the meeting.  (*Id.* at Ex. 9.)  At that fact finding, Plaintiff indicated that in February 2002 she included Mr. Nasuti on an all-staff e-mail and discussed her plans at a Directors' Meeting.  (*Id.*; Pl.'s Statement of Mat'l Facts ¶ 7.)  Mr. Nasuti stated at the fact finding that neither he nor any of the Bureau Directors recalled Plaintiff informing them about the meeting (Pl.'s Statement of Mat'l Facts Ex. 9), but stated in his March 14, 2005 deposition that Plaintiff copied him on two mass e-mails prior to the conference.  (Nasuti Dep. 79-84.)

Plaintiff has also indicated that Mr. Nasuti should have been aware of the plans for the meeting because it appeared on the OVR training calendar as early as May 2002. (Pl.'s Statement of Mat'l Facts ¶ 7, Ex. 2 ¶ 93, Ex. 7.)  Plaintiff also said that at a July 2002 training session the staff often spoke about the meeting in Mr. Nasuti's presence, and at times with Mr. Nasuti, who did not appear to lack

knowledge of the meeting.  (Pl.'s Statement of Mat'l Facts ¶ 7, Ex. 2 ¶ 95.)  Wendy Buzzanco, an OVR employee during Plaintiff's term as Director, stated the same in her deposition.  (Buzzanco Dep. 22-24.)

Neither Defendants' Brief in Support of their Motion for Summary Judgment nor their Reply Brief in Support of Their Motion for Summary Judgment provide details regarding the training session at issue.  However, Plaintiff's suspension and dismissal letters (Defs.' Mot. for Summ. J. Exs. 8, 2) contain brief references indicating that Plaintiff's conduct in planning the meeting was a basis for her dismissal.  Mr. Nasuti also included a brief description of the incident in his August 12, 2003 memorandum recommending Plaintiff's dismissal.  (*Id.* at Ex. 3.)

### c.    <u>The Letters Regarding Plaintiff's Failure to Follow Protocols</u>

Plaintiff's dismissal letter refers to two "letters of instruction involving [Plaintiff's] failure to follow other protocols or exercise good judgment."  (*Id.* at Ex. 2.)  Mr. Nasuti's memorandum recommending that Plaintiff be terminated identified an August 5, 2003 Memorandum of Instruction that he sent to Plaintiff and an April 2003 memorandum to Plaintiff from the Office of Chief Counsel.  (*Id.* at Ex. 3.)

Mr. Nasuti's August 5, 2003 Memorandum of Instruction outlined the proper procedures regarding political contacts on behalf of the Department.  (*Id.* at Ex. 11.)  Mr. Nasuti indicated that he issued the memorandum because Plaintiff sent an e-mail (which she later rescinded at Mr. Nasuti's request) to her District Managers instructing them to write to Senator Arlen Specter regarding obtaining matching funds and assist in having Casework Managers and customers to do the same.  (*Id.*)

In the April 22, 2003 memorandum, Catherine Wojciechowski, the Department's Deputy Chief Counsel, instructed Plaintiff to immediately stop

providing legal advice to her staff and to "seek and follow the legal advice provided by [the Office of Chief Counsel] and otherwise by the Office of General Counsel (OGC)." (*Id.* at Ex 10.)  The memorandum also stated that Plaintiff had "readmitted a blind vendor into the Business Enterprises Program (BEP)" against the advice of the Office of Chief Counsel.  (*Id.*)

It is unclear whether the April 22nd memorandum was based on instances of Plaintiff's providing legal advice separate from the readmittance of the blind vendor.  The memorandum merely states "You have apparently been providing legal advice to members of your staff." (*Id.*)  It also sets forth statutory provisions regarding the ramifications of Plaintiff rendering legal advice, but never discusses any specific instances other than that involving the blind vendor.  (*Id.*)  Plaintiff disputes whether she provided unauthorized legal advice or acted without or against the advice of the Office of Chief Counsel in the matter.   (Pl.'s Statement of Mat'l Facts ¶ 9.) Plaintiff states that she consulted with Assistant Counsel Robert Schramm before readmitting the vendor into the program.  (*Id.*)  Mark Frankel, formerly acting Director of Field Operations at OVR, also submitted in an affidavit that he and Plaintiff worked with Mr. Schramm in the matter.  (*Id.* at Ex. 1 ¶ 5.)

## 2. Mr. Nasuti's Conduct During Plaintiff's Employment at OVR

Plaintiff bases her ADA and PHRA claims on several encounters with Mr. Nasuti and others during the course of her employment, including a) accusations of misconduct to engineer her dismissal; b) verbal abuse; and c) denial of reasonable accommodations.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. 1-2.)

### a. Accusations of Misconduct

The facts set forth above in Section I.B.1. regarding Plaintiff's dismissal are the same facts that are relevant to Plaintiff's allegations that Defendants falsely accused her of misconduct and engineered her dismissal.

In addition, Plaintiff has provided affidavits of various colleagues and other OVR employees who attest to her professional abilities and note that while Plaintiff was Director of BBVS the bureau experienced an increase in the number of successful employment outcomes and skills training for blind and visually impaired customers, increases in blind vendors' income, and improvements in services and programs.  (*Id.* at Ex. 1 ¶¶  3-4; Buzzanco Dep. 12; Armbruster Dep. 15-16; Antonacci Dep. 122-27; Jobes Dep. 71-73.)

### b.    **Verbal Abuse**

Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Doc. 104), Plaintiff's affidavit and deposition included therein, and Plaintiff's Statement of Material Facts (Doc. 103-1) all state that Mr. Nasuti repeatedly harassed Plaintiff because she was blind by "repeatedly derogating her and the blind community."  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. 8.)  Plaintiff specifically describes two such occasions.

First, during a December 2000 meeting,[4] before Mr. Nasuti was Plaintiff's superior, he criticized Plaintiff for "focus[ing] too much on the blind" and stated that she was delusional if she thought "the blind are any kind of a force to be reckoned with."  (*Id.* at 3, Ex. 2 ¶ 79; C. Boone Dep. 44-50.)  During the same meeting Mr. Nasuti was also critical of the National Federation of the Blind. (*Id.*)

---

[4]    Plaintiff initiated the meeting because she anticipated Mr. Nasuti's promotion to the Director position and wished to address tension that she perceived between them and to "clear the air" while they were still professional equals.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. Ex. 2 ¶ 79.)

Defendants do not appear to dispute that these statements were made, but only whether Plaintiff felt at the time that they were evidence of Mr. Nasuti's bias.  (Defs.' Reply Brief in Supp. of Mot. for Summ. J. 8.)

Second, on August 1, 2003, when Mr. Nasuti met with Plaintiff to discuss her actions regarding the OVR policy, he questioned Plaintiff's professional abilities for reasons connected with her blindness.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. Ex. 2 ¶ 118.)  In addition, when Plaintiff rose unsteadily to leave Mr. Nasuti's office, he said "Oh, God forbid that a blind person should fall down in my office."  (*Id.*)  Mr. Nasuti then explained that he had been mortified when another OVR employee who had a disability had fallen in Mr. Nasuti's office the previous week.  (*Id.* ¶ 118.)

Defendants generally dispute whether there is evidence of Mr. Nasuti's animus or bias and whether Plaintiff was dismissed because of her blindness.  (Defs. Reply Brief in Supp. of Mot. for Summ. J. 8.)  They also offer facts in contradiction of such bias, including Mr. Nasuti's 30-plus year career in the rehabilitation field, his mother's blindness as a motivation for his chosen career path, and Plaintiff's replacement by Pamela Shaw, who is blind.  (*Id.*)  However, Defendants fail to directly dispute whether Mr. Nasuti made the statements described.

### c.    **Denial of Reasonable Accommodations**

Plaintiff identifies three instances where Defendants denied her reasonable accommodations, including their refusal to allow her time to obtain blind accessible study materials for the Pennsylvania Bar Exam, Mr. Nasuti's failure to provide agendas in Braille for the OVR Directors' Meetings, and Mr. Nasuti's denial of Plaintiff's request for a parking spot.

First, Plaintiff states that in her first position with the Department, staff attorney in the Office of Chief Counsel, she learned in the fall of 1999 that she would be required to take the Pennsylvania Bar Exam in February 2000.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. 2.)  Chief Counsel Roger Caffier denied Plaintiff's request to take the July 2000 exam so that she would have time to obtain the study materials accessible for the blind.  (*Id.*)  Plaintiff was subsequently able to obtain blind accessible materials for the multi-state portion of the exam only, which she passed. (*Id.*)  However, Plaintiff failed the state specific essay portion.  (*Id.*)

Second, Plaintiff avers that she repeatedly asked Mr. Nasuti to either provide her with agendas in Braille for his weekly staff meetings or to provide the agendas sufficiently in advance so she could Braille them herself, but Mr. Nasuti never did.  (*Id.* at 3.)

Third, Plaintiff indicates that when the OVR offices moved to a restricted access building located in an unsafe neighborhood in Harrisburg, Pennsylvania, Mr. Nasuti denied her request for an additional building access pass for her driver.  (*Id.* at 4.)  Plaintiff states that the building security guard left for the day before her driver arrived to pick her up and that without an access pass Plaintiff or her driver would have to wait outside.  (*Id.*)  Consequently, Plaintiff changed her scheduled work hours in order to get a ride with another employee who had access to the building.  (*Id.*)

Again, aside from a general denial that they did not dismiss Plaintiff because she was blind, Defendants do not appear to dispute any of these specific factual allegations.

### 3.   **Post-Dismissal Actions**

10

Plaintiff bases her § 1983 "stigma-plus" claim on the facts surrounding her dismissal, along with letters and public statements that the Defendants issued in connection with Plaintiff's dismissal.

Plaintiff offers as an example of  a September 2003 letter from Secretary Schmerin to Representative Matthew N. Wright in which the Secretary addressed Plaintiff's dismissal and an advertisement notice placed in *The Philadelphia Inquirer* regarding the matter.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. Ex. 26.)  In the letter Secretary Schmerin stated that Plaintiff was dismissed for "compelling, performance-based reasons involving behavior unacceptable from an employee" and denied that her dismissal was predicated on her blindness.  (*Id.*)  Defendants note that, per the deposition of James Antonacci, the National Federation of the Blind of Pennsylvania (NFB PA) paid for the advertisement, which referred to Plaintiff's termination on charges of insubordination.  (Defs.' Mot. in Supp. of Summ. J. Ex. 21 at 49-55.)

Plaintiff also references a September 4, 2003 *Pittsburgh Post-Gazette* article that describes a rally held in the Pennsylvania Capitol building by supporters of Plaintiff.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. Ex. 27.)  The article reported that Plaintiff was terminated for insubordination, and includes a quote from Plaintiff in which she denied the allegations.  (*Id.*)  In the article, Barry Ciccocioppo, the Department's press secretary, declined to comment on the reasons for Plaintiff's dismissal.  (*Id.*)  In addition, he credited advancements made at BBVS during Plaintiff's tenure as director to a synergy resulting from the bureau's transfer from the Department of Public Welfare.  (*Id.*)

11

Defendants identify a September 5, 2003 *Patriot News* article covering the rally in which Plaintiff was "quoted as saying that the 'official reason for her firing was insubordination.'" (*Id.* ¶ 27.)

Finally, Plaintiff refers to several affidavits of individuals in the national vocational rehabilitation community who attest to damage to Plaintiff's reputation in the field because of her dismissal. (Pl.'s Opp'n to Defs.' Mot. for Summ. J. 19, Exs. 28-30.)

### B.   Procedural History

Plaintiff originally filed suit in state court, alleging state law claims, as well as a claim under 42 U.S.C. § 1983. Defendants then removed the case to this court. The parties stipulated to a stay of the proceedings while Plaintiff exhausted her administrative remedies on related disability discrimination claims. After the stay was lifted, Plaintiff filed an Amended Complaint, which added claims under the Pennsylvania Human Relations Act ("PHRA")[5] and the Americans with Disabilities Act ("ADA").[6]

The court later granted Plaintiff leave to file a Second Amended Complaint. Defendants subsequently filed a Motion to Dismiss seven of the eight counts included. On June 6, 2005 the court issued an order dismissing Counts I-IV and parts of Counts V, VI, and VIII, with respect to certain Defendants.

Plaintiff's remaining claims include: 1) Count V – § 1983 claims for injunctive relief against Mr. Nasuti and Secretary Schmerin in their official capacities and claims for injunctive and monetary relief against both defendants in their

---

[5]   The PHRA is codified at 43 Pa. Cons. Stat. Ann. §§ 955 *et seq.*

[6]   The ADA is codified at 42 U.S.C. §§ 12101 *et seq.*

individual capacities; 2) Count VI – PHRA claims against all Defendants and ADA claims for injunctive relief against Mr. Nasuti and Secretary Schmerin in their official and individual capacities; 3) Count VII - additional PHRA claims against Mr. Nasuti and Secretary Schmerin; and 4) Count VIII - a conspiracy claim against Mr. Nasuti and Secretary Schmerin.

## II.           <u>Legal Standard: Motion for Summary Judgment</u>

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 249. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on

file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  *Saldana*, 260 F.3d at 232. (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989).

**III.**      **Discussion**

     **A.**   **Count V**

Plaintiff's remaining claims under Count V of her Second Amended Complaint include § 1983 claims for injunctive relief against Mr. Nasuti and Secretary Schmerin in their official capacities and claims for injunctive and monetary relief against both defendants in their individual capacities.  Defendants move for summary judgment on count V by asserting defenses of either absolute immunity or qualified immunity.  The court will deny Defendants' Motion for Summary Judgment as to Count V because Defendants Nasuti and Schmerin are not entitled to immunity from Plaintiff's § 1983 claims.

### 1.   <u>Absolute Immunity</u>

Defendants Nasuti and Schmerin, as government officials, are not entitled to absolute immunity.  Absolute immunity has only been sparingly recognized by the Supreme Court, which has refused to extend it "any 'further than justification would warrant' " even when recognizing absolute immunity for judicial, prosecutorial, and legislative functions.  *Burns v. Reed*, 500 U.S. 478, 486-87 (1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 810-11 (1982)).  "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties."  *Id.*

Moreover, although Defendants premise their absolute immunity argument on state law, pursuant to *Lindner v. Mollan*, 677 A.2d 1194 (Pa. 1996) and *Factor v. Goode*, 612 A.2d 591 (Pa. Commw. 1992), state law immunities are not defenses in § 1983 litigation.  *Howlett v. Rose*, 496 U.S. 356, 372 (1990).  The question of immunity as a defense to a § 1983 suit is entirely a question of federal law.  *Wood v. Strickland*, 420 U.S. 308, 314 (1975), *overruled on different grounds*. State law immunities cannot prevent the enforcement of a federal law.  *Id.*  Thus, Defendants' absolute immunity argument fails and the court will turn to the question of whether Defendants Nasuti and Schmerin are protected by "good faith" or qualified immunity.

### 2.   <u>Qualified Immunity</u>

Defendants Nasuti and Schmerin are not entitled to qualified immunity from Plaintiff's claims for equitable relief.  Qualified immunity, where available, precludes suits for damages only, not suits for injunctive relief.  *Hewitt v. Helms*, 482 U.S. 755, 768 (1987).  Accordingly, the court will deny Defendants' Motion for

Summary Judgment as to Plaintiff's § 1983 claims for injunctive relief against Mr. Nasuti and Secretary Schmerin in both their official capacities and individual capacities.

Thus, the only remaining question with respect to Count V is whether Defendants are entitled to qualified immunity from Plaintiff's § 1983 claim for damages against Mr. Nasuti and Secretary Schmerin in their individual capacities. *Harlow v. Fitzgerald* sets forth the current test for whether officials are "shielded from liability for civil damages." 457 U.S. 800, 818 (1982).[7]   Qualified immunity is available as a defense to § 1983 claims "insofar as [the government officials'] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*   The inquiry is two-fold.  The threshold determination is whether, taken in the light most favorable to Plaintiff, the allegations establish that a constitutional right has been violated.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Wright v. City of Philadelphia*, 409 F.3d 595, 600 (3d Cir. 2005).  Upon such a finding, the court must then determine whether it is a clearly established right such that a reasonable person should know that his conduct was unlawful.  *Saucier,* 533 U.S. at 201-02.  Because the right at issue is a clearly established right of which a reasonable person should know, the court will deny Defendants' Motion for Summary Judgment as to the damages aspect of Count V of Plaintiff's Second Amended Complaint.

---

[7]    Defendants rely on *Harlow* to assert qualified immunity in their Brief in Support of their Motion for Summary Judgment, but then argue in their Reply Brief that *Harlow* is inapplicable in an attempt to bolster their absolute immunity theory.  Defendants are correct that the *Harlow* court stated the issue before it was not the immunity available to state officials in § 1983 actions; however, the Court further stated that "it would be 'untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials.' "  457 U.S. at 818 n.30 (quoting *Butz v. Economou*, 438 U.S. 478, 504 (1978)).

### a.   **Constitutional Right Inquiry**

Plaintiff's § 1983 claims are based on the "stigma-plus" or "reputation-plus" cases that originated in the Supreme Court's decision in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972).[8]  *Ersek v. Township of Springfield*, 102 F.3d 79, 83 n.5 (3d Cir. 1996).  Defendants argue that because Plaintiff was an at-will employee she had no property interest that entitled her to a hearing in connection with her dismissal.  However, when a stigma is imputed to a plaintiff in connection with her termination and no hearing is afforded, it constitutes a deprivation of a protected *liberty* interest without due process of law.[9]  *Owen v. City of Independence*, 445 U.S. 622, 682-83 (1980) (finding no merit to a challenge that petitioner was deprived of a protected liberty interest where there was a stigma associated with petitioner's discharge and that the appeals court correctly concluded that when petitioner was denied the opportunity to a hearing to clear his name, it constituted a deprivation of liberty without due process of law) (emphasis added); *see also Roth*, 408 U.S. at 573 (explaining that where the government's dismissal of an employee is accompanied by a charge "that might seriously damage [the employee's] standing and associations in [the employee's] community . . . . notice and an opportunity to be heard are essential" and "due process would accord an opportunity to refute the charge").

---

[8]   Defendants are incorrect in their assertion that Plaintiff's claim should be treated as a defamation claim.  In its Order of June 6, 2005, (Doc. 85) the court stated that Plaintiff's § 1983 claim in Count V is properly construed as a "stigma-plus" claim.

[9]   As the court also noted in its Order of June 6, 2005, (Doc. 85) Plaintiff does not allege that her property interests were violated; thus, the court will view Plaintiff's § 1983 claims solely as alleged violations of her liberty interests.

17

In order to establish a "stigma-plus" claim, "a plaintiff must show a stigma to [her] reputation plus some concomitant infringement of a protected right or interest." *Ersek*, 102 F.3d at 83 n.5.  This requirement that the plaintiff show harm to reputation – deprivation "not only of present government employment but of *future opportunity* for it" – is the critical element.  *Id.* at 84; *Roth*, 408 U.S. at 574 (emphasis added).  It was the failure to adduce the requisite level of harm that was fatal to the attempted "stigma-plus" claims in *Roth*, as well as in a line of cases following *Roth*.  *See Paul v. Davis*, 424 U.S. 693, 706, 712 (1976); *Codd v. Velger*, 429 U.S. 624, 628-629 (1977); *Ersek*, 102 at 84-85.

Taken in the light most favorable to the Plaintiff, *see Saucier,* 533 U.S. at 201, Plaintiff has adduced sufficient evidence to establish a stigma to her reputation and harm to other employment opportunities in the field of vocational rehabilitation. Defendants' stated reasons for dismissing Plaintiff include insubordination, failure to cooperate, and lack of required skills.  These reasons, which Plaintiff disputes were the actual reasons for her dismissal, sufficiently imputed a stigma to Plaintiff's termination.  Defendants' acts of disabling Plaintiff's computer, requiring Plaintiff to leave on the day she was terminated, providing only same-day notice of Plaintiff's departure to other employees, and using yellow crime tape to block access to Plaintiff's office after her dismissal, and Secretary Schmerin's letters stating that Plaintiff was dismissed for "compelling, performance-based reasons involving behavior unacceptable from an employee" also contributed to the stigma associated to Plaintiff's termination.

Plaintiff has also adduced sufficient evidence of harm to her ability to obtain employment in the fields of blindness and vocational rehabilitation because of

18

the damage to her reputation.  The depositions of professionals in those fields, as well as Plaintiff's subsequent difficulty in obtaining employment nation-wide except for a lower paying, part-time position that requires a several hour commute, establish the requisite harm for a "stigma-plus" claim.  The media coverage regarding Plaintiff's termination also supports a finding of harm.  Accordingly, Plaintiff's allegations, taken in the light most favorable to her, show that a constitutional right has been violated.[10]  *See Saucier*, 533 U.S. at 201.

### b.      Clearly Established Right Inquiry

The second part of the *Harlow* inquiry considers whether the constitutional right at issue was a clearly established one of which a reasonable person would have known."  457 U.S. at 818.  Essentially, the test is whether the government officials had fair warning that their alleged conduct was unconstitutional, based on the state of law at the time.  *Hope v. Melzer*, 536 U.S. 730, 741 (2002).  Thus, the court must determine whether Defendants had fair warning in 2003 that denying Plaintiff an opportunity to refute the charges against her was a constitutional violation.  "This is not to say that [Defendants'] action[s are] protected by qualified immunity unless the very action[s] in question ha[ve] previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  *Id.* at 739 (internal citations omitted).

The Defendants violated clearly established law.  As discussed above, the Supreme Court's 1972 decision in *Roth* and the subsequent line of cases,

---

[10]      Plaintiff also argues that she satisfies the first part of the *Harlow* inquiry because she can establish a First Amendment retaliation claim.  However, Plaintiff's Second Amended Complaint fails to raise such a claim.  Thus, Plaintiff may not raise it now at the summary judgment stage of the proceedings.  *Laurie v. Nat'l Passenger R.R. Corp.*, 105 F. App'x 387, 392-93 (3d Cir. 2004).

particularly the Court's 1980 decision in *Owen*, stand for the proposition that, where there is a stigma imputed to an at-will employee as a result of her dismissal, due process requires that the employee be afforded the opportunity to refute the charges against her. *Roth*, 408 U.S. at 558; *Owen*, 445 U.S. at 682-83.

Admittedly, the state of the law is arguably uncertain with respect to what constitutes a "plus," in a stigma-plus claim, but the law is clear regarding the requirement that an opportunity be afforded to refute a stigma attached to a dismissal. The Third Circuit stated in *Ersek* (a 1996 decision) that it only assumed without deciding that the loss of at-will employment was sufficient to satisfy the "plus" aspect of a "stigma-plus" claim. 102 F.3d at 83 n.5.[11]   However, the *Ersek* court first asserted the same well-established premise that "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* at 83.  Moreover, although *Ersek* discusses the import of *Paul v. Davis* to the question of what satisfies the "plus" factor, *Paul* does not question the principle, stated in *Roth*, that there must be requisite harm to establish a "stigma-plus" claim. *Paul*, 424 U.S. at 709 (stating that *Roth* is inconsistent "with any notion that a defamation perpetrated by a government official but unconnected with any refusal to rehire would be actionable under the Fourteenth Amendment").

Finally, Defendants' attempt to use *Siegert v. Gilley*, 500 U.S. 226 (1991), to refute this principle fails.  *Seigert* relied on *Paul* when it refused to find a

---

[11]   Out of completeness, the court notes that the Third Circuit again stated it has not yet decided this issue in *Graham v. City of Philadelphia*, 402 F.3d 139 (3d Cir. 2005).  However, because the conduct at issue in the instant case took place in 2003, *Graham* is not relevant to the inquiry of whether Defendants had fair notice regarding the state of the law at that time.

denial of a constitutional right where the defamation alleged, unlike in the instant case, was not incident to the termination. *Id*. at 234. However, *Seigert* just re-affirms the same premise stated in *Paul,* that *Roth* requires some proof of harm beyond the defamation or comment imputing the stigma alone. *Id.* Thus, *Seigert* does not alter the court's analysis here.

Accordingly, taking the allegations as true, *see Saucier*, 533 U.S. at 201, Defendants' denial of Plaintiff's opportunity to refute the charges against her was a denial of a clearly established right of which a reasonable person should have known. Therefore, the Defendants are not entitled to qualified immunity and the court will deny the Motion for Summary Judgment as to Count V of Plaintiff's Second Amended Complaint.

### B.   Count¶ VI

In Count VI, Plaintiff alleges violations of Title 1 of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq. (2000). The ADA prohibits an employer from discriminating against a qualified person with a disability with respect to certain employment decisions. 42 U.S.C. § 12112 (2000). Plaintiff also alleges violations of the Pennsylvania Human Resources Act (PHRA), which contains a similar prohibition. *See* 43 Pa. Cons. Stat. Ann. § 955(a) (West Supp. 2005). Because the ADA and PHRA are "basically the same . . . in relevant respects," analysis of ADA claims is generally applicable to claims under the comparable provisions of the PHRA. *Buskirk*, 307 F.3d at 160, 166 n.1 (3d Cir. 2002).

Plaintiff alleges discrimination and harassment in violation of the ADA and PHRA. The court will address each of these claims in turn.

### 1.   Discrimination

The *McDonnell Douglas* burden shifting analysis applies to ADA discrimination claims (and, thus, to the PHRA discrimination claims as well). *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The now well-settled steps of *McDonnell Douglas* are: 1) the plaintiff must establish a prima facie case of discrimination; 2) the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection"; and 3) the plaintiff then bears the burden of showing that the employer's proffered reason is pretext and that the "presumptively valid reasons for [her] rejection were in fact a coverup for a [] discriminatory purpose." 411 U.S. at 802, 804-05; *Shaner*, 204 F.3d at 500.

### a.    Prima Facie Case

Plaintiff has satisfied her burden of establishing a prima facie case of discrimination. A prima facie case of disability discrimination under the ADA and PHRA requires the plaintiff to show that she 1) has a disability; 2) is a "qualified individual"; and 3) has suffered an adverse employment action because of that disability. *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 (3d Cir. 2002). Defendants do not dispute that Plaintiff satisfies the first two conditions, but argue that she has not suffered an adverse employment action because she is blind, but for cause.

Defendants also argue that their hiring of Pamela Shaw, who is blind, to replace Plaintiff, refutes a finding of discrimination. However, although the evidence regarding Ms. Shaw is relevant to the inquiry, *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515 (3d Cir. 2003), it does not automatically preclude Plaintiff from establishing a prima facie case of discrimination. *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 353-54 (3d Cir. 1999) (noting in a Title VII case discussion of the

*McDonnell Douglas* burden shifting scheme that, "even if a woman is fired and replaced by another woman, she may have been treated differently from similarly situated male employees").

Moreover, Defendants based Plaintiff's termination, at least in part, on her refusal to implement the college tuition policy, but later delayed implementing the policy themselves. These acts, if otherwise unexplained, are sufficient to "give rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Accordingly, Plaintiff has satisfied her burden of establishing a prima facie case of discrimination under the ADA and PHRA.

### b. <u>Legitimate Nondiscriminatory Reason</u>

Defendants have met their burden of articulating a legitimate nondiscriminatory reason for Plaintiff's termination. In order to meet their burden under *McDonnell Douglas*, Defendants are not required to convince the court that they were "actually motivated by the proffered reasons," but only need to introduce evidence sufficient to justify a judgment in their favor. *Burdine*, 450 U.S. at 254. Defendants argument that they terminated Plaintiff for cause are supported by the dismissal letter, as well as the memoranda referencing plaintiff's conduct regarding the training session, the political contact policy, and procedures for obtaining and dispensing legal advice. Thus, Defendants have sufficiently articulated a nondiscriminatory reason for terminating Plaintiff under *McDonnell Douglas*.

### c. <u>Pretext</u>

Plaintiff has produced sufficient evidence to raise a genuine issue of fact as to whether Defendants' proffered reason is pretext for Plaintiff's dismissal. Accordingly Plaintiff's discrimination claim survives summary judgment. *Fasold v.*

*Justice*, 409 F.3d 178, 185 (3d Cir. 2005).  The factual dispute at issue is whether discriminatory animus motivated Defendants.  *Id.* at 185 n.11.  Plaintiff must either "persuad[e] the court that a discriminatory reason more likely motivated the employer or [show] that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256.   As a threshold matter, even though Defendants' offered a satisfactory explanation for Plaintiff's dismissal, Plaintiff's initial evidence and corresponding inferences, properly drawn, may be used to discredit Defendants' explanation.  *Id.*

Plaintiff has provided affidavits or deposition testimony as to the following : 1) affirmations of Plaintiff's professional abilities as Director of BBVS that attribute increases in attaining BBVS objectives and improvements of bureau programs and services to Plaintiff; 2) statements that Mr. Nasuti had advance notice of the training session that led to her two-week suspension; 3) her consultation with Assistant Counsel Robert Schramm in various legal matters; 4) statements made by Mr. Nasuti to Plaintiff regarding her blindness and the blind generally; and 5) Defendants' denials of Plaintiff's requests for accommodations with respect to obtaining bar exam study materials, and provision of Braille agendas and a parking spot.

Although Defendants fail to specifically address these allegations, the court presumes they dispute them because they refer to them as "a blizzard of allegations" and state that "the undisputed facts . . . do not support Plaintiff's position."  (Defs.' Brief in Supp. of Mot. for Summ. J. 16.)  Resolving these disputes in Plaintiff's favor, *Saldana*, 260 F.3d at 232, there is sufficient evidence from which a reasonable fact-finder could determine that Defendants' proffered

reasons for Plaintiff's termination are pretext for discrimination. *Anderson,* 477 U.S. at 248; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 144-45 (2000) (Plaintiff's satisfactory explanations for and ability to identify inaccuracies in the defendants' underlying reasons for termination were sufficient to discredit proffered nondiscriminatory reasons).  Thus, the court will deny Defendants' Motion for Summary Judgment with respect to Plaintiff's discrimination claims under the ADA and PHRA in Count VI.[12]

### 2.   Harassment

To establish a prima facie case of harassment based on disability, the plaintiff must show that

> 1) she is a qualified individual; 2) she was subject to unwelcome harassment; 3) the harassment was based on her disability or a request for an accommodation; 4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and 5) that the employer knew or should have known of the harassment and failed to take prompt remedial action.

*Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir.  1999).[13]  The court must consider all of the circumstances, including factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

---

[12]   Plaintiff's remaining ADA claims are against Mr. Nasuti and Secretary Schmerin in their official and individual capacities only.  To the extent that there is a question regarding Secretary Schmerin's liability for actions specifically attributed to Mr. Nasuti, the court finds that Mr. Nasuti's memorandum requesting Plaintiff's termination is sufficient evidence to show that Mr. Nasuti influenced Secretary Schmerin's decision to do so.  Accordingly, any discriminatory animus attributed to Mr. Nasuti may be imputed to Secretary Schmerin.  *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001).

[13]   The Third Circuit has assumed a cause of action for harassment under the ADA because of "almost identical" language creating a cause of action for a hostile work environment in Title VII.  *Walton*, 168 F.3d at 666-667.

interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The objective standard for proving an "abusive work environment" requires Plaintiff to show "that the harassment was 'sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Id.* In addition, there is a subjective requirement that Plaintiff "must have perceived [the environment] as hostile or abusive ." *Id.*

Although Plaintiff states that Mr. Nasuti repeatedly harassed her, she only specifically describes two instances in which Mr. Nasuti made comments that she found to be offensive – the conversation she and Mr. Nasuti had before he became her supervisor and the August 2003 meeting regarding Plaintiff's actions regarding the OVR college tuition policy. In addition, Plaintiff bases her claim on Mr. Nasuti's failure to provide Braille agendas prior to weekly staff meetings and his denial of her request for a building access card for her driver.[14] Defendants appear to dispute these allegations, but again, fail to specifically address them.

However, even drawing all inferences in favor of Plaintiff, there is insufficient evidence to satisfy *Harris*'s "severe and pervasive" standard. *See id.* (finding no hostile work environment where defendant told an agoraphobic plaintiff she would be fired if she did not attend a graduation ceremony, called plaintiff manic-depressive, called on ten consecutive days while plaintiff was hospitalized to inquire about her return date, stated a belief that persons suffering from mental illness have

---

[14]   Plaintiff also argues that Mr. Nasuti's cancellation of the September 2003 training session and his involvement in her subsequent suspension, as well as Defendants' efforts to engineer her dismissal, contributed to the hostile environment. Although these facts are relevant to the determination of whether Plaintiff's termination was motivated by discriminatory animus, Plaintiff fails to identify corresponding comments or behavior that clearly identify these acts as incidences of harassment under an objective standard. Thus, they do not support Plaintiff's claim of a hostile work environment.

impaired judgment, and directed plaintiff's staff not to speak with her about a work program while she was hospitalized).  Plaintiff for the most part describes only isolated instances of offensive comments.  With respect to the failure to provide Braille agendas, which occurred on a weekly basis, she fails to show that having someone read her the agendas, which were distributed to the directors via e-mail just before the meetings, at the start of the meetings instead altered or diminished her conditions of employment.

Moreover, Plaintiff's accounts of her emotional and physical symptoms of anxiety in connection with her employment fail to establish that she was responding to a severe and pervasive environment of harassment rather than a general fear of losing her job in connection with her actions concerning the training session or OVR college tuition policy.  Accordingly, Plaintiff fails to establish a claim for a hostile work environment and the court will grant Defendants' Motion for Summary Judgment with respect to that claim.

**C.   Count VII**

In Count VII of her Second Amended Complaint, Plaintiff claims that Mr. Nasuti and Secretary Schmerin violated a provision of the PHRA that prohibits any person from aiding or abetting in any discriminatory practice.  *See* 43 Pa. Cons. Stat. Ann. § 955(e) (West Supp. 2005).  Defendants fail to make specific arguments addressing this claim in their Motion for Summary Judgment, but again, their general denial of Plaintiff's allegations would appear to dispute some of the relevant facts. The undisputed facts however establish that summary judgment is not appropriate as to either Defendant Nasuti or Schmerin because both were involved in Plaintiff's dismissal.

Liability for aiding and abetting in discrimination in violation of the PHRA turns on an individual's direct involvement in discriminatory practices or his failure to respond where he knew or should have known of such acts. *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552-53 (3d Cir. 1996). Plaintiff bases her discrimination claim primarily on Mr. Nasuti's direct actions. Accordingly, Mr. Nasuti might be liable under § 955(e) of the PHRA for aiding and abetting in the discriminatory acts alleged. *See id.* at 553.

Plaintiff also provides evidence that Mr. Nasuti provided advice to Secretary Schmerin regarding Plaintiff prior to her dismissal, in particular, in his August 12, 2003 memorandum recommending Plaintiff's termination. In addition, Secretary Schmerin is the person who issued Plaintiff's termination letter. Thus, Secretary Schmerin was also to some extent directly involved or knew or should have known of any practices relevant to Plaintiff's termination. Accordingly, Secretary Schmerin also might be liable under § 955(e) of the PHRA. Thus, the court will deny Defendants' Motion for Summary Judgment with respect to Count VII.

### D.   Count VIII

In Count VIII of her Second Amended Complaint Plaintiff raises a conspiracy claim predicated upon the alleged § 1983 violations she claims in Count V. "[A] civil conspiracy may not exist without an underlying tort . . . ." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 405 (3d Cir. 1999). Accordingly, because the § 1983 claims against Defendants Nasuti and Schmerin in Count V of Plaintiff's Second Amended Complaint survive summary judgment, the related conspiracy claim in Count VIII does as well. Thus, the court denies Defendants' Motion for Summary Judgment with respect to Count VIII.

28

**IV.**          <u>**Conclusion**</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 100) will be granted in part and denied in part.  Defendants' motion will be granted with respect to Plaintiff's hostile work environment claims in Count VI. Defendant's motion will be denied in all other respects.  The following claims survive summary judgment: 1) Plaintiff's § 1983 claims for injunctive relief against Mr. Nasuti and Secretary Schmerin in their official capacities and claims for injunctive and monetary relief against both defendants in their individual capacities in Count V; 2) Plaintiff's PHRA discrimination claims against all Defendants and ADA discrimination claims for injunctive relief against Mr. Nasuti and Secretary Schmerin in their official and individual capacities in Count VI; 3) Plaintiff's additional PHRA claims against Mr. Nasuti and Mr. Schmerin in Count VII; and 4) Plaintiff's conspiracy claim against Mr. Nasuti and Mr. Schmerin in Count VIII.  An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  October 12, 2005.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**CHRISTINE BOONE,**

           **Plaintiff,**

        **v.**

**PENNSYLVANIA OFFICE OF
VOCATIONAL REHABILITATION,**
*et al.*,

           **Defendants.**

:
:
:
:
:
:
:
:
:
:
:
:
:

**CIVIL NO. 1:CV-04-0588**

**JUDGE SYLVIA H. RAMBO**

## O R D E R

In accordance with the accompanying memorandum of law, **IT IS
HEREBY ORDERED THAT**:

    1)  Defendants' Motion for Summary Judgment (Doc. 98) is
**GRANTED in part** and **DENIED in part** as follows:

        a) Defendants' motion is **GRANTED** with respect to Plaintiff's
hostile work environment claim in Count VI.

        b) Defendants' motion is **DENIED** in all other respects.

    2)  The following claims remain viable in this case:

        a) Plaintiff's § 1983 claims for injunctive relief against Mr. Nasuti
and Secretary Schmerin in their official capacities in Count V;

        b) Plaintiff's § 1983 claims for both injunctive and monetary relief
against Mr. Nasuti and Secretary Schmerin in their individual capacities
in Count V;

c) Plaintiff's ADA discrimination claims for injunctive relief against Mr. Nasuti and Secretary Schmerin in their official and individual capacities in Count VI;

d) Plaintiff's PHRA discrimination claims in counts VI and VII; and

e) Plaintiff's conspiracy to violate § 1983 claims against Mr. Nasuti and Secretary Schmerin in Count VIII.

3) The Clerk of Court shall defer the entry of the grant of summary judgment granted in ¶ 1(a) above until the conclusion of this case.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  October 12, 2005.