IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTINE BOONE,** | **CIVIL NO. 1:CV-04-0588** |
| **Plaintiff,** | **JUDGE SYLVIA H. RAMBO** |
| v. | |
| **PENNSYLVANIA OFFICE OF VOCATIONAL REHABILITATION,** *et al.*, | |
| **Defendants.** | |

## **M E M O R A N D U M**

Before the court is Plaintiff's motion for reinstatement to the position of Director of the Bureau of Blindness and Visual Services ("BBVS"). The parties have briefed the issues and the matter is ripe for disposition. For the following reasons, the court will deny Plaintiff's motion.

Defendants have also filed a Motion for Leave to File a Supplemental Answer and Exhibit to Plaintiff's Motion for Reinstatement (Doc. 183). Because the court will deny Plaintiff's motion for reinstatement, Defendants' motion will be deemed to be moot.

**I.** **Background**

The court will dispense with a full recitation of the facts because they are well known to both parties and have been set forth in detail in prior court documents. (*See* Docs. 85, 127.) On November 22, 2005, a jury found that all of the Defendants discriminated against Plaintiff because of her blindness, and that

Defendants Stephen Nasuti and Stephen Schmerin stigmatized Plaintiff in connection with her termination and violated Plaintiff's due process rights when they refused to grant her a post-termination hearing.  The jury also found Defendants Nasuti and Schmerin guilty of conspiracy to stigmatize Plaintiff and violate her due process rights in connection with her dismissal.  The jury awarded Plaintiff over $3.1 million in compensatory damages, which included $180,000 for front pay.  In addition, the jury awarded Plaintiff $175,000 in punitive damages.

On November 23, 2005, the court ordered Plaintiff to file in writing her election to pursue reinstatement or accept the front pay damages award.  On December 5, 2005, Plaintiff filed the instant Memorandum in Support of Plaintiff's Reinstatement to the Position of Director of the Bureau of Blindness and Visual Services (Doc. 176).

**II.**      **Legal Standard**

The availability of reinstatement as an equitable remedy in unconstitutional discharge cases arising under [42 U.S.C.] § 1983 is a decision that rests soundly within the discretion of the district court.  *Moore v. Susquehanna Area Reg'l Airport Auth.*, No. Civ. A. 1:02-CV-0535, 2005 WL 2430790, at *12 (M.D. Pa. Sept. 30, 2005) (citing *Squires v. Bonser*, 54 F.3d 168, 171 (3d Cir. 1995)).  In the Third Circuit there is a strong presumption in favor of reinstatement.  *Id.*  The court's decision should be guided by the "legislative goals of providing plaintiffs make-whole relief and deterring employers from unconstitutional conduct." *Id.*

"However, reinstatement is not the exclusive remedy, because it is not always feasible, such as when there exists 'irreparable animosity between the

parties.' " *Feldman v. Philadelphia Housing Auth.*, 43 F.3d 823, 831 (3d Cir. 1994) (quoting *Versarge v. Township of Clinton, New Jersey*, 984 F.2d 1359, 1368 (3d Cir. 1993)). "In order to deny reinstatement, more than the ordinary tensions accompanying an unconstitutional discharge suit must be present." *Squires*, 54 F.3d 168 at 175 ("disturbing consequences," revival of "old antagonisms," or the breeding of "difficult working conditions" are usually insufficient grounds for denying reinstatement). The requisite animosity must amount to more than "routinely 'incidental' burdens" arising from forcibly reuniting parties such as "displacement of employees who have assumed duties previously performed by the fired worker" and the resulting decrease in efficiency of business operations. *Moore*, 2005 WL 2430790, at *12 (quoting *Rosario-Torres v. Hernandez-Colon*, 889 F.2d 314, 321-22 (1st Cir. 1989) (en banc)); *see also Squires*, 54 F.3d 168 at 173 (relying upon the *Rosario-Torres* burden discussion as "well-reasoned"). The existing animosity between the parties must rise to such a level that it makes the remedy of reinstatement "impracticable." *Squires*, 54 F.3d at 172.

   Finally, a district court that denies make-whole relief must "articulate its reasons for doing so." *Id.* at 172 n.6. The court's determination requires careful consideration of the particular circumstances before it. *Feldman*, 43 F.3d at 832. Accordingly, when a court denies the preferred remedy of reinstatement, it must set forth the facts and circumstances that support its decision. *See Squires*, 54 F.3d at 172 n.6.

**III.        Discussion**

The court finds that the record contains sufficient evidence of distrust and hostility between the parties to support a finding that reinstatement would be impracticable. The court bases its decision on the evidence related to "events prior to [Plaintiff's] termination, the termination itself, and the litigation that followed in its wake." *Feldman*, 43 F.3d at 832.[1] The *Feldman* facts, although distinct in some respects, are instructive. In *Feldman*, where a Philadelphia Housing Authority auditor was improperly terminated in violation of Pennsylvania's Whistleblower Law, the district court ruled that reinstatement was not a viable remedy. *Feldman v. Philadelphia Housing Auth.*, Civ. A. No. 91-5861, 1993 WL 404094, at *1 (E.D. Penn. Sept. 16, 1993). Although Plaintiff, unlike Mr. Feldman, has expressed her desire to be reinstated to her former position, a number of other factors weigh more heavily against granting her request.

As in *Feldman*, the instant Defendants contended that Plaintiff was fired for "insubordination, at the very least." *See Feldman*, 1993 WL 404094, at *1. Defendants argued throughout the litigation that Plaintiff's insubordination was the "legitimate, non-discriminatory reason" for her dismissal. *See, e.g.*, Doc. 100 at 4-10, 17, 24; Defts. Ex. 1; Pl. Ex. 14.) In addition, Defendants Nasuti and Schmerin both maintained at trial that they decided to terminate Ms. Boone because of what they considered to be acts of insubordination.

---

[1] The court notes that it has not considered any of the affidavits submitted by Defendants as Exhibits to their Memorandum in Opposition to Motion for Reinstatement (Doc. 179). The trial transcript and trial exhibits, as well as the court's own observations of events that transpired during the trial, including the views, character, and demeanor of Plaintiff and those witnesses with whom she would work were she to be reinstated to her former position as Director of BBVS, provide a sufficient basis for the court's decision.

4

Defendant Schmerin's testimony is what is relevant to the court at this time, because he is still the Secretary of the Department of Labor and Industry and would be still be the supervisor of Plaintiff's direct supervisor if the court were to order reinstatement.[2] On several occasions during his testimony, Secretary Schmerin questioned Ms. Boone's ability to follow policy and stated that she was fired for refusing to adhere to an Office of Vocational Rehabilitation (OVR) policy. (Trial Tr. Nov. 16, 2005 at 35-36. 43, 52.)[3] He described Plaintiff as "a runaway train" (*id.* at 126) and stated "I was already convinced that this was an employee that could not follow policies.  This was an individual that could not adhere to higher-ups or a director or a secretary, and I thought it was in our best interest to terminate her" (*id.* at 138).

Secretary Schmerin further expressed a significant lack of trust when he described why he thought BBVS was better off without Plaintiff by comparing Ms. Boone to the woman who succeeded her as Director of BBVS: "[Pam Shaw is a person] who understands the chain of command, who understands the ability to deal with the OVR executive director and not make decisions without input from that director without relying upon legal, without relying upon legislative office, and without relying upon the policy office." (*Id.* at 153.)

---

[2] Mr. Nasuti retired in 2004; therefore any animosity that exists between him and Plaintiff is not relevant to the court's instant inquiry.

[3] The court notes that the transcript of the eleven-day trial, which is extensive, was not available in final form when the court wrote this memorandum.  Rather than delaying the court's decision by waiting until the transcript is complete, the court has cited to the relevant testimony as well as it can at this time.  Page numbers cited indicate the page number of the transcript for the date cited only; they will change once the complete transcript is numbered sequentially, although the dates of the cited testimony will obviously remain the same.

5

The testimony of Roger Caffier, Chief Counsel for the Department of Labor and Industry, also raised the insubordination issue. Mr. Caffier responded to questions regarding why Ms. Boone's office had been locked following her termination, stated that locking offices or otherwise securing work areas after an employee was dismissed is common practice when there is an "issue of lack or trust or subordination involved." (Trial Tr. Nov. 19, 2005 at 77.)

In addition to the ample evidence of Defendants distrust, Plaintiff's testimony describing the pre-dismissal state of her relationship with Catherine Wojciechowski contributed to the court's finding of out-of-the-ordinary animosity. Ms. Wojciechowski works in the Office of Chief Counsel in the Department of Labor and Industry and would be the person Ms. Boone's would rely upon for legal advice for BBVS if the court were to order reinstatement. Ms. Boone testified as to her opinion that Ms. Wojciechowski ceased to provide services or advice to Ms. Boone after September 2002. (Trial Tr. Nov. 9, 2005 at 20-21.) She later described the climate with respect to her working relationship with Ms. Wojciechowski as one where there was "no working relationship at that point." (*Id.* at 128.)

Upon consideration of the testimony of Secretary Schmerin, Mr. Caffier, and Ms. Boone, the court finds that the level of animosity and distrust between Defendants and Ms. Boone is greater than the usual or incidental burdens that accompany a wrongful discharge. *See Squires*, 54 F.3d at 172-73.

In addition to the existing distrust and animosity, it is abundantly clear that a fundamental disagreement regarding OVR's college tuition policy still exists between Plaintiff and the Defendants who remain at OVR, such that reinstatement would be impracticable. Defendants cited Plaintiff's refusal to follow the policy as

one of the reasons for her dismissal and substantial testimony was elicited during trial on the subject. The court will not delve into the merits of the college tuition policy dispute, which was not an issue at trial. However, the court notes that the policy is still in force and Plaintiff and Catherine Wojciechowski continue to present irreconcilable views regarding the policy. Although other witnesses were questioned about their understanding of the policy, the court will focus on Ms. Wojciechowski's testimony because she is the individual responsible for reviewing the policy for OVR on behalf of the Department's Office of Chief Counsel and, as previously noted, the person who would be responsible for providing legal advice to Ms. Boone if the court were to order reinstatement. Moreover, it is Ms. Boone's and Ms. Wojciechowski's differing opinions that have been at the forefront of the college policy dispute at all times during this litigation.

Ms. Boone testified that the college tuition policy, specifically whether merit scholarships could be deducted from student awards, was the topic of discussions at OVR from the time she began working at the agency until she was terminated. (Trial Tr. Nov. 8, 2005 at 45.) In the course of responding to questions regarding her opinion versus Ms. Wojciechowski's opinion regarding whether federal law prohibited OVR from considering merit scholarships in calculating student awards, Ms. Boone referred to the language of the Rehabilitation Act of 1973 and said: "And you read the language of the Act. It's right there. It says that we can't use them." (*Id.* at 86.) In fact, Ms. Boone testified at length regarding her position that merit scholarships should not be deducted from amounts that OSM provided to students. (*See id.* at 86-98.) On cross-examination, Plaintiff reiterated her opinion that OVR's policy, including specifically what was articulated by Ms.

7

Wojciechowski, to the contrary was illegal.  (*See* Trial Tr. Nov. 9, 2005 at 87, 98, 101, 105, 109, 114, 115, 120, 138-39.)  Ms. Wojciechowski's testimony established that OVR's policy today is the same policy that Ms. Boone opposed during her employment and continues to contest.  (*See* Trial Tr. Nov. 16, 2005 at 201-02, 213; Trial Tr. Nov. 17, 2005 at 3, 43, 44-49, 90.)  Accordingly, the court finds that Plaintiff and her would-be co-workers continue to be at such an impasse over the policy that a productive work relationship and efficacious work environment are not feasible.

Moreover, in addition to the testimony evidence, the court observed firsthand an utter lack of trust and willingness to cooperate by both parties.  Under these circumstances, the relationship between Plaintiff and Defendants is damaged well beyond the "ordinary tensions" accompanying reinstatement.  The fact that Defendant Nasuti has retired and would no longer serve as Plaintiff's immediate supervisor does not alter the circumstances.  Other individuals remain who were at the forefront of the litigation, who clearly expressed their lack of trust in Plaintiff (and vice versa), and who maintain distinctly different views about the college policy.

Finally, court is satisfied that the significant damages awarded are sufficient to serve the legislative goal of deterring such behavior.  Accordingly, upon consideration of all of the relevant facts and circumstances, the court will deny Plaintiff's motion for reinstatement.

**IV.        Conclusion**

For the foregoing reasons, the court will deny Plaintiff's Motion for Reinstatement to the Position of Director of the Bureau of Blindness and Visual Services.  Accordingly, Defendants' Motion for Leave to File a Supplemental Answer and Exhibit in Opposition to Plaintiff's Motion for Reinstatement is moot.  An appropriate order will issue.

s/Sylvia H. Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated:  January 27, 2006.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTINE BOONE,** | **CIVIL NO. 1:CV-04-0588** |
| Plaintiff, | **JUDGE SYLVIA H. RAMBO** |
| v. | |
| **PENNSYLVANIA OFFICE OF VOCATIONAL REHABILITATION,** *et al.*, | |
| Defendants. | |

# O R D E R

In accordance with the accompanying memorandum of law,

**IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion for Reinstatement to the Position of Director of the Bureau of Blindness and Visual Services is **DENIED**.

2. Defendants' Motion for Leave to File a Supplemental Answer and Exhibit to Plaintiff's Motion for Reinstatement is deemed **MOOT**.

                                                                                    s/Sylvia H. Rambo
                                                                                   SYLVIA H. RAMBO
                                                                                 United States District Judge

Dated:  January 27, 2006.