IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTINE BOONE,** | : | **CIVIL NO. 1:CV-04-0588** |
| **Plaintiff,** | : | **JUDGE SYLVIA H. RAMBO** |
| | : | |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA OFFICE OF** | : | |
| **VOCATIONAL REHABILITATION,** | : | |
| ***et al.,*** | : | |
| **Defendants.** | : | |

## M E M O R A N D U M

Before the court is Defendants' Post-Trial Motion Pursuant to Federal Rules of Civil Procedure 50 and 59 for Judgment as a Matter of Law, for a New Trial, or to Amend the Judgment (Doc. 204). The parties have briefed the issues and the matter is ripe for disposition. For the following reasons, the court will deny Defendants' motion in part and grant it in part. The court will grant Defendants' motion for remittitur with respect to the emotional distress damages, but will deny the motion in all other respects.

## I.     Background

The facts leading to up to trial are set forth in detail in the court's summary judgment ruling (Doc. 127). On November 22, 2005, following an eleven-day trial, a jury found that Defendants, the Pennsylvania Department of Labor & Industry Office of Vocational Rehabilitation, Stephen Nasuti, and Stephen Schmerin (hereinafter "the Commonwealth Defendants" or "Defendants"), discriminated

against Plaintiff Christine Boone because she is blind.  The jury further found that Mr. Nasuti and Secretary Schmerin aided and abetted the discrimination.

In addition, the jury found that Mr. Nasuti and Secretary Schmerin denied Ms. Boone her due process rights in violation of 42 U.S.C. § 1983 because they "made false, defamatory, and stigmatizing statements to the public in the proximate time of her termination that called into question Plaintiff's good name, reputation, and personal qualifications in the field of vocational rehabilitation." (Jury Verdict, Doc. 171 at 2.)  Finally, the jury found that Mr. Nasuti and Secretary Schmerin conspired to stigmatize Plaintiff in connection with her termination and to deny her a name clearing hearing.

The jury awarded Plaintiff $3,000,000 in emotional distress damages and $180,000 in front pay damages.  The jury did not award back pay damages.  The jury also awarded Plaintiff $175,000 in punitive damages.[1]

The Commonwealth Defendants filed the instant motion on February 13, 2006, and seek judgment as a matter of law in their favor, or in the alternative a new trial, or in the further alternative a remittitur on damages.

## II.      Legal Standard

### A.      Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50 governs motions for judgment as a matter of law.  Rule 50 provides, in relevant part:

---

[1]  The emotional distress and front pay damage awards were split equally between Mr. Nasuti and Secretary Schmerin.  However, with respect to punitive damages, Mr. Nasuti and Secretary Schmerin were assessed $25,000 and $150,000, respectively.

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1).  The court should grant a motion for judgment as a matter of law "only if, viewing the evidence in the light most favorable to the nonmovant and, giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258, 269 (3d Cir. 2005); *see also McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005).

The court is precluded from making credibility determinations, weighing the evidence, and drawing legitimate inferences from the facts because such functions are reserved for the jury. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  The court considers the record as a whole, but may only rely upon "evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.' " *Id.* at 151. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 300 (1986)).  Judgment as a matter of law "may not stand unless the record is critically deficient of that minimum quantum of evidence from which the jury might reasonably afford relief." *Fineman v. Armstrong World Indust., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992) (internal quotations omitted).

### B.   **Motion for New Trial**

A motion for a new trial is governed by Federal Rule of Civil Procedure 59. Under this rule, in the case of a jury trial, "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a)(1). In the Third Circuit, a new trial is warranted "when the verdict is against the great weight of the evidence or errors at trial produce a result inconsistent with substantial justice." *Sandrow v. United States*, 832 F. Supp. 918, 918 (E.D. Pa. 1993) (citing *Roebuck v. Drexel Univ.*, 852 F.2d 715, 735-36 (3d Cir. 1988)); *see also Bullen v. Chaffinch*, 336 F. Supp. 2d 342, 346 (D. Del. 2004) (noting that excessive damages or improper use of peremptory challenges to exclude potential jurors on the basis of race are other grounds for a new trial).

When a motion for a new trial is based on a prejudicial error of law, the court has broad discretion to order a new trial. *Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993). If, however, a motion for a new trial is premised on a verdict that is allegedly against the weight of the evidence, the court's discretion is more limited. *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991). Under these circumstances, a new trial should only be granted when the verdict "cries out to be overturned or shocks the conscience." *Id*. Nonetheless, in reviewing a motion for a new trial, the court must draw all reasonable inferences in favor of the verdict winner. *Marino v. Ballestas*, 749 F.2d 162, 167 (3d Cir. 1984); *see also* 12 James Wm. Moore et al., Moore's Federal Practice § 59.13.

**III.**      <u>Discussion</u>

      **A.**      <u>42 U.S.C. § 1983 "Stigma-Plus" Claim</u>

            **1.**   <u>Rule 50 Motion</u>

                  **a.**   <u>Nature of Stigma</u>

      The Commonwealth Defendants first argue that a stigma cannot exist unless an employer accuses an employee of immoral or criminal behavior. Defendants further interpret the court's reference to yellow crime tape in its October 12, 2005 order (Doc. 127)[2] as an affirmation of this premise and cite the court's later exclusion of references to yellow crime tape as a basis for finding error with the court's denial of Defendants' motion for summary judgment and for granting their Rule 50 motion now.

      First, *Alexander v. Hargrove*, upon which Defendants rely, fails to support such a restricted view.  1995 WL 144636, at *9 (E.D. Pa. March 31, 1995). As the court previously held in its disposition of Defendants' Motion to Dismiss (Doc. 85), "stigma-plus" claims are not strictly limited to statements of dishonesty or criminal conduct or immorality.  *Board of Regents of State Colleges v. Roth* identified dishonesty and immorality as examples of the kinds of charges that put "a person's good name, reputation, honor, or integrity" at stake, but did not strictly limit stigma-plus claims to those two categories.  408 U.S. 564, 572 (1972). *Hargrove* involved accusations of criminal conduct, but failed to establish that *Roth* and its progeny could not apply outside of such facts.  Among the cases that review stigma-plus claims are some that involve criminal or immoral charges and some that

---

        [2]  The court's order, which denied the Commonwealth Defendants' motion for summary judgment, included a reference to yellow crime tape in the discussion of Plaintiff's stigma-plus claim.

do not; however, none suggest that charges of immorality or dishonesty represent the only conduct upon which such claims may stand.  Moreover, the Third Circuit has expressly indicated that the determination of what constitutes a stigma requires consideration of the subsequent injury and effects of the charges made.  *See McKnight v. S.E. Pa. Transp. Auth.*, 583 F.2d 1229, 1235-37 (3d Cir. 1978) (discussing that whether an allegation of intoxication while at work was merely a charge of an isolated incident insufficient to impute a stigma or the equivalent of labeling a person an alcoholic, and if so, how to determine whether that was sufficient to impute a stigma under *Roth*).  Thus, Plaintiff was not required to show that Defendants accused her strictly of immoral or illegal conduct and the absence of such charges fails to provide a basis for granting Defendants' Rule 50 motion.

Second, Defendants' attempt to inflate the significance of the court's rulings with respect to yellow crime tape fails.  At the summary judgment stage, the court determined that "Defendants' stated reasons for dismissing Plaintiff[,] insubordination, failure to cooperate, and lack of required skills," reasons which Plaintiff disputed were the real reasons, "sufficiently imputed a stigma to Plaintiff's termination."  (Doc. 127 at 18.)  The court identified use of yellow crime tape to block access to Plaintiff's door after her dismissal as one of a number of additional acts that further contributed to the stigma associated with Plaintiff's dismissal.  However, the presence or absence of yellow crime tape was not the pivotal factor in the court's decision at that time.  Accordingly, the court's misinterpretation of the

reliability of the evidence Plaintiff planned to submit with respect to the yellow crime tape[3] was not an error that would have altered the court's finding.

### b.   **Manner of Termination**

Defendants also argue that the manner of Plaintiff's dismissal cannot serve as a basis of a stigma-plus claim because the manner of dismissal was comprised of internal acts that were not publicized.  However, Defendants supply only scant authority that is not completely on point or not from this jurisdiction. More importantly, even accepting the premise as true, the court again notes that its decision at the summary judgment stage was sufficiently based on Defendants' public statements, which they made at the time of Plaintiff's termination and maintained throughout litigation, and even now, that Plaintiff was terminated "for cause" – for "compelling, performance-based reasons" and for reasons "involving behavior unacceptable from an employee."  These statements preclude the court from granting Defendants' Rule 50 motion based on the question of whether Plaintiff established stigma, regardless of whether the issue of the manner of Plaintiff's termination may be considered.

### c.   **The Statements**

Defendants further challenge the sufficiency of the statements to establish stigma.  Defendants cite to *Scarnati v. Washington* for the premise that statements that criticize competence, performance, or abilities are insufficient to impute a stigma.  599 F. Supp. 1554, 1556 (3d Cir. 1985), *aff'd*, 772 F.3d 896 (3d

---

[3] Before trial Defendants moved to exclude any testimony regarding yellow crime tape that was based on solely on rumor; the court subsequently ruled that any proposed evidence regarding yellow crime tape that was offered as evidence of stigma would be subject to Federal Rule of Evidence 801 and excluded unless the witness had personal knowledge.  (*See* Doc. 132 at 3.)

Cir.).  Defendants fail, however, to equate a label of incompetence with one of insubordination or dismissal for cause, or claims that Plaintiff was unwilling to cooperate or acted in an unacceptable manner.  Accordingly, Defendants fail to provide authority sufficiently analogous to the instant scenario for the court to grant the Rule 50 motion.

Defendants also dispute whether statements made by Mr. Nasuti and Secretary Schmerin were "substantially and materially false," *Ersek v. Twp. of Springfield*, 102 F.3d 79, 83-84 (3d Cir. 1996), without specifically identifying the statements or discussing how or why they were not materially false.  The court acknowledges that the parties have disputed throughout this litigation whether Plaintiff's conduct constituted insubordination and whether the other reasons stated by Defendants for her termination were true.  Both parties presented evidence via testimony from various witnesses regarding the instances Defendants identified as acts of insubordination and the circumstances and events surrounding those acts (e.g., the state-wide training session, her actions regarding the college scholarship policy, her role in the readmittance of Ben Marshall to the Business Enterprise Program, her communications to staff regarding writing letters to Senator Specter).  The weighing of whether the proffered reasons for Plaintiff's discharge were false was properly left to the jury.  The court cannot say that, when drawing all inferences in favor of Plaintiff, the jury's finding in this regard was unreasonable.

Defendants also contend that judgment as a matter of law is warranted because the statements of Mr. Nasuti and Secretary Schmerin were made only in the non-public personnel process and were not publicized by the government or made in response to inquiries or publicity initiated by others.  The instant record plainly

contradicts a finding that Defendants did not make public statements.  Secretary

Schmerin, relying upon the information that Mr. Nasuti submitted to him, made

affirmative statements in letters sent to legislators and citizens that Plaintiff was

terminated "for compelling, performance-based reasons involving behavior

unacceptable from an employee."  In addition, Secretary Schmerin's spokesperson,

Barry Ciccocioppo, was quoted in the September 5, 2003 issue of *The Patriot News*,

stating that Plaintiff was terminated "for cause," a public statement regarding

Plaintiff's dismissal that further contributes to the sense of wrongdoing associated

with the termination.  These statements may fairly be said to have originated with

Defendants.

Defendants rely upon *Bishop v. Wood*, 426 U.S. 341, 348 (1976) and

*Burton v. Town of Littleton*, 426 F.3d 9, 15-19 (1st Cir. 2005) as bases for granting

their Rule 50 motion on the publicity-related grounds.  However, both cases are

distinguishable from the instant facts because there were no public communications

at all regarding the plaintiffs' terminations in *Bishop* or *Burton*.  The court also finds

the instant facts distinguishable from those of *Scarnati*, where it appeared that the

plaintiff, Dr. Scarnati, attempted to publicize his discharge, and the record contained

no inferences at all that the employer made any public comment to the press or

otherwise.[4]  The court has also reviewed the cases of *Bollow v. Federal Reserve

Bank of San Francisco*, 650 F.2d 1093 (9th Cir. 1981), *Orloff v. Cleland*, 708 F.2d

---

[4]  The court notes that the evidence presented at trial supports the inference that the NFB and not Plaintiff, was responsible for sending letters to elected representatives regarding Plaintiff's dismissal. Similarly, although Plaintiff spoke at the rally at the Capitol Building in Harrisburg on September 4, 2003, the evidence established that the NFB planned and executed the event, which was covered by *The Patriot News* and other members of the media.  These facts further distinguish the instant circumstances from those of *Scarnati.*

372 (9th Cir. 1983), and *Wojcik v. Mass. State Lottery Commission*, 300 F.3d 92 (1st Cir. 2002).[5]  In *Bollow*, the reasons for firing the plaintiff were also never publicly disclosed. 650 F.2d at 1101.  In *Orloff*, the Ninth Circuit remanded the case because material issues of fact existed regarding whether the employer publicized the reasons for the plaintiff's discharge.  708 F.2d at 378 (finding that it was unclear what a hospital administrator, who admitted to speaking to the press, actually told the press).  In *Wojcik*, the evidence of publication was insufficient because the plaintiff failed to establish that the defendants/appellees made the defamatory statements at issue, and only showed that newspaper reporters had "hastily (and incorrectly) [drawn] a connection [between known events] and [the plaintiff's] suspension and subsequent termination." 300 F.3d at 103-04.  None of these cases squarely address the publication issue posed by the facts of the instant case.  It is not clear from these cases that, as a matter of law, affirmative public statements fail to be actionable simply because the initial source of related information was someone other than the defendants.

Moreover, the statements made by Defendants here are distinguishable from the publicized statements at issue in *Wojcik*, which were found to be undisputedly true and accurate.  Here, the statements may be interpreted as allusions to wrongdoing, and such wrongdoing is disputed.  As Defendants have repeatedly pointed out, Ms. Boone was an at-will employee who they could have terminated for no reason at all and without any hearing.  However, Defendants did not terminate her for no reason, but chose to terminate her for cause.  Both sides presented conflicting evidence regarding whether the charges of insubordination or

---

[5] *Scarnati* relied upon *Bollow* and *Orloff*, while *Burton* discussed *Wojcik*.

wrongdoing were false.  That issue was properly left to the jury, for the purposes of weighing the evidence and making the requisite credibility determinations.  A review of the evidence supports the inference that the Defendants' statements were sufficient to harm Plaintiff's "good name, reputation, honor, or integrity" and "seriously damage [her] standing and associations in [the] community."  *Roth*, 408 U.S. at 573.  Because the evidence allows for such an inference, the court will draw that inference in favor of Plaintiff.  Accordingly, Defendants' arguments that they either did not make public statements or made them only in response to others' inquiries fails to provide a basis for granting their Rule 50 motion.

### d.   <u>Substantial Impairment</u>

Defendants contend that Plaintiff failed to establish that her ability to work in her field was severely impaired.  Plaintiff presented evidence at trial regarding how many jobs she applied for, how far she advanced in the interview process, where applicable, and her lack of success throughout.  She further discussed details regarding her current position (lower status, lower pay, fewer number of hours, out-of-state location), as well as the circumstances surrounding a job offer with the Rehabilitative Services Administration in Washington, D.C., including how that position would have compared to her position as Office of Vocational Rehabilitation Director.  (Trial Tr. 203-16, Nov. 8, 2005.)  In addition, Vito deSantis, the Executive Director for the New Jersey State Commission for the Blind and Visually Impaired, testified regarding the negative impact of Plaintiff's dismissal on her job prospects within his agency.  (Trial Tr. 1194-95, Nov. 15, 2005.)  In light of this evidence, and drawing inferences in favor of Plaintiff, the

court cannot conclude that Plaintiff failed to establish sufficient injury such that judgment as a matter of law for Defendants would be appropriate.

### e.   **Qualified Immunity**[6]

Defendants also move for judgment as a matter of law on qualified immunity grounds.  Qualified immunity is available as a defense to § 1983 claims "insofar as [the government officials'] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The two-part inquiry considers first, whether a constitutional right has been violated and if so, second, whether the right was clearly established such that a reasonable person would know that his conduct was unlawful.  *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

Defendants first argue that they did not violate Plaintiff's constitutional rights, essentially for the reasons discussed above.  The court has already considered Defendants' positions on those issues and declined to consider them a basis to grant the Rule 50 motion.  Accordingly, the court will not disturb the jury verdict that Plaintiff's constitutional right was violated.

Defendants next argue that the second prong of *Harlow* is not satisfied here because the constitutional right was not clearly established.  As the court discussed in its October 12, 2005 order denying Defendants' motion for summary judgment (Doc. 127), although some aspects of stigma-plus law may be still evolving, the requirement that an individual be granted an opportunity to refute a

---

[6] The court notes that Defendants' motion for judgment as a matter of law stated that the motion should be granted on the basis of absolute immunity.  The brief in support of the motion, however, contains no such arguments.  Thus, the court will consider that argument, which it previously addressed at the summary judgment stage, waived, and will not address it here.

stigma attached to a dismissal is clear.  *See Ersek*, 102 F.3d at 83 ("[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."); *see also Roth*, 408 U.S. at 558; *Owen v. City of Independence*, 445 U.S. 622, 682-83 (1980).

Defendants' attempt to use *Patterson v. City of Utica* to bolster their argument fails.  370 F.3d 322 (2d Cir. 2004).  The court finds Defendants' summary of the jury findings there and the rulings of the Second Circuit to be overly simplified such that Defendants' characterization is inconsistent with this court's reading of that case.  Moreover, although the court agrees that *Patterson* is not applicable to the clearly established prong of the qualified immunity inquiry here, because the Second Circuit published its decision after Plaintiff's dismissal,[7] the court notes that even the *Patterson* court recognized a clearly established rule that "the appropriate remedy for a stigma-plus claim premised on a plaintiff's termination from at-will government employment is a post-deprivation name-clearing hearing."  *Id.* at 335.

Finally, the court will address Defendants' characterization of the court's ruling on their Rule 50 motion at the close of Plaintiff's case.  The court made the statement that "this case presents some very, very close issues" (Trial Tr., 1467, Nov. 16, 2005) after the parties argued a number of issues, many of which

---

[7] Defendants further note that the court relied upon *Patterson* when drafting jury instructions.  However, the discussion of *Patterson* in court (Trial Tr. 1965, Nov. 21, 2005) pertained to the issue of the degree of impairment to job opportunities within her field that Plaintiff needed to establish.  *See Patterson*, 370 F.3d at 330.  The court also relied upon *Patterson* when drafting portions of the jury instructions regarding damages.  *See id.* at 337-38.  However, the court did not, at any time before or during trial, rely upon *Patterson* with respect to any issue pertaining to qualified immunity.

have been discussed here, including some arguments with respect to qualified immunity.  The court did not elaborate on which issues it considered to be particularly close at that time, nor did it give any indication whether it considered every issue to be a close one.  To characterize the court's statement so as to give weight to any one of those arguments is to construe the court's ruling in a manner that the court did not.

## 2.   Rule 59 Motion

### a.   Statements of Mr. Harris and Mr. DeSantis

Defendants contend that the court incorrectly allowed Mr. Harris and Mr. DeSantis to make statements that should have been excluded as hearsay regarding Ms. Boone's reputation in the blind and vocational rehabilitation community.  As the court stated in its October 14, 2005 order (Doc. 132), the statements at issue did not constitute hearsay because they were not offered to establish the truth of the statements (i.e., whether Plaintiff had acted in an illegal manner or otherwise engaged in wrongdoing).  *See* Fed. R. Evid. 801.  Moreover, Defendants were afforded the opportunity to cross-examine Mr. Harris and Mr. DeSantis about those matters, elicit that those witnesses' personal opinions of Plaintiff remained high, and later craft their closing argument based on that evidence.  Thus, the Harris and DeSantis testimony was not prejudicial and fails to provide a basis for granting Defendants' Rule 59 motion.

### b.   Qualified Immunity Instruction

Defendants next argue that the court's denial of their request for a supplemental qualified immunity instruction constituted prejudicial error. Defendants cite to *Harvey v. Plains Township Police Department*, 421 F.3d 185,

14

194 n.12 (3d Cir. 2005) as support for the premise that the issue of reasonableness, with respect to whether Mr. Nasuti and Secretary Schmerin would reasonably have known that the right at issue was a clearly established one, should have been submitted to the jury.  However, Defendants' interpretation incorrectly interprets the language of *Harvey* regarding the role of a jury in qualified immunity determinations.  The *Harvey* court noted that, although it was drawing a factual inference in favor of the plaintiff for purposes of summary judgment, that disputed material fact should be left to the jury to consider at trial.  *Id.*  However, the fact left to the jury was not the legal concept of reasonableness of the police officer defendant's action for immunity purposes, but whether the police officer in fact acted in the manner alleged – specifically whether the police officer ordered the landlord to open the door prior to the search in question.  *Id.* at 194 ("We stress that, at this stage, we must take for a fact that the officer *ordered* the landlord to open the door.").  *Harvey* contains the well-settled principle that " 'qualified immunity is an objective question to be decided by the court as a matter of law.' " *Id.* at 194 n.12. (quoting *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004)); *see also Czurlanis v. Albanese*, 721 F.2d 98, 108 (3d Cir. 1983) (interpreting *Harlow* "as instructing the lower federal courts that the issue of qualified immunity would ordinarily be one of law for determination by the courts").[8]  Moreover, the *Harvey* court clearly made a reasonableness decision once it had drawn the factual inference required.  *Id.* at 194 ("[The act of the officer ordering the landlord to open the door], and only this, is the action we find to be unreasonable, and clearly so.").  There were

---

[8]  *Saucier v. Katz*, 533 U.S. 194 (2001), also cited by Defendants, is consistent with this rule as well.

no historical facts material to the qualified immunity issue disputed in the instant case. Therefore, the court correctly declined to give a qualified immunity instruction.

### c.   <u>Causation Instruction</u>

Defendants argue that the court gave an erroneous causation instruction by failing to include requested proximate cause language.[9] In Pennsylvania, substantial factor causation applies. *Schieber v. Philadelphia*, 156 F. Supp. 2d 451, 456 (E.D. Pa. 2001). Both parties cited *Schieber* in their proposed jury instructions. Furthermore, Defendants' reliance upon *Hector v. Watt* as support for their proximate cause position fails. 234 F.3d 154 (3d Cir. 2001). Aside from the fact that *Hector* dealt with an illegal search issue and is thus factually distinguishable, Defendants cite to the concurring opinion in *Hector*, which advocated a causation position that the majority did not reach. *Id.* at 161-62 (The majority stated, "[g]iven that the cases on intervening causes are legion and difficult to reconcile, . . . and that we have other, sufficient grounds for resolving this case, we will not reach the issue of intervening causation."). Accordingly, Defendants fail to establish that this court gave an erroneous causation instruction and the court will not grant the Rule 59 motion on this ground.

### d.   <u>Verdict Against Nasuti on Stigma Claim</u>

Defendants contend that the jury's answer to Special Verdict Question No. 3 is against the weight of the evidence because there was no evidence that Mr.

---

[9]  The court gave the following causation instruction: "Now, Plaintiff must demonstrate by a preponderance of evidence that Secretary Schmerin's and Stephen Nasuti's stigmatizing statements were a substantial factor that caused the harm that she claims to have suffered. A substantial factor is an actual, real, significant, or recognizable cause. A substantial factor cannot be speculative or doubtful cause of harm." (Trial Tr. 2162-63, Nov. 21, 2005).

Nasuti made any statements to the public.  Defendants cite no case law in support of their position that Mr. Nasuti cannot be found liable under the instant circumstances, but base their argument completely on the fact that he did not personally make the public statements.  Plaintiff, however, argues that Mr. Nasuti was a primary participant in Plaintiff's dismissal and cite to *Commonwealth of Pennsylvania ex rel. Rafferty v. Philadelphia Psychiatric Center* to support the principle that the manner of termination, specifically summary dismissal, can impute a stigma by having a "major effect" on one's reputation and "major consequences for [one's] professional career."  356 F. Supp. 500, 510 (E.D. Pa. 1973).

The court also notes that Plaintiff elicited evidence at trial regarding Mr. Nasuti's role in Plaintiff's termination including his communications to Secretary Schmerin regarding Plaintiff's conduct.  Although there is sufficient evidence to support an inference that Mr. Nasuti was closely involved and that his comments influenced Secretary Schmerin's decision to terminate Plaintiff, neither party provides any case law or argument regarding liability based on such actions, aside from what the court has summarized above.  However, the court does not have to decide the specific issue of whether an individual may be liable for influencing a dismissal and making stigmatizing statements internally that are repeated by another publicly.  Because the jury found Mr. Nasuti and Secretary Schmerin guilty of conspiracy, a verdict that the court will not disturb as discussed below, Mr. Nasuti may be found liable as a co-conspirator for the acts of Secretary Schmerin.  *See Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F. Supp. 2d 400, 412 n.13 (W.D. Pa. 2002).  Thus, the verdict is not against the weight of the evidence.

### e.   Severe Impairment Verdict

Defendants argue that the testimony at trial established that Plaintiff was immediately afforded opportunities to apply for jobs after her dismissal, that she declined a federal rehabilitation position, and that she ultimately took a job with Blind Industries of Maryland.  Plaintiff counters that the trial evidence established that Plaintiff unsuccessfully applied for numerous jobs that were at or below her level of experience and that her current position with Blind Industries of Maryland is part-time, at a lower level, and involves a three-hour daily round trip commute. (Trial Tr. 203-16, Nov. 8, 2005.)  In light of the evidence referenced by Plaintiff, the court cannot find that the jury verdict, that Plaintiff's ability to obtain employment in her profession was "severely impaired," was against the weight of the evidence.

### f.   Conspiracy Verdict

Defendants also move for a new trial, contending that Plaintiff failed to adduce evidence that Mr. Nasuti and Secretary Schmerin agreed to stigmatize Plaintiff by meeting and discussing a plan to do so.  Plaintiff argues that direct testimony of a conspiracy or proof of an express agreement among all the conspirators is not required for a civil conspiracy, citing to *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979), *rev'd on other grounds*, 446 U.S. 754 (1980) (citing *Adickes v. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  Plaintiff is correct that an inference of "a common understanding drawn from circumstantial evidence" rather than "direct proof of an express agreement" is sufficient to establish a conspiracy.  *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 111 (3d Cir. 1980) (stating "[t]he picture of conspiracy as a meeting by twilight of a trio of sinister persons with pointed hats close together belongs to a darker age.") (internal

citation omitted).  Plaintiff introduced evidence of an e-mail exchange between Roger Caffier and Secretary Schmerin establishing that Defendants decided to dismiss Plaintiff as early as August 3, 2003.  (Pl. Ex. 78.)  In addition, Plaintiff questioned Secretary Schmerin regarding a memorandum prepared by Mr. Nasuti, dated August 12, 2003, that recommended Plaintiff's dismissal.  (Def. Ex. 1.)  The jury was entitled to consider these exhibits, including their date discrepancy, as well as the testimony of Secretary Schmerin[10] and Mr. Nasuti, and draw whatever inferences, credibility determinations, and conclusions they used to reach their verdict.  The court finds that such circumstantial evidence is sufficient to support an inference of a meeting of the minds and thus provides a sufficient basis to sustain the jury's verdict on the conspiracy claim.

## B.   Discrimination Claim

### 1.   Rule 50 Motion

Defendants argue that their stated reason for terminating Plaintiff, her refusal to follow the merit scholarship policy, was a legitimate basis for termination and that Plaintiff failed to adduce sufficient evidence of pretext at trial.  Plaintiff counters that she and other witnesses testified to statements and actions attributed to Mr. Nasuti that provide a sufficient basis for upholding the jury verdict.  The court acknowledges that much of the evidence set forth is in the nature of conflicting witness testimony, subject to credibility and other determinations properly left to the

---

[10]  Secretary Schmerin testified specifically regarding Plaintiff's Exhibit No. 78 and Defendants' Exhibit No. 1 on November 16, 2005.  (*See* Trial Tr. 1390, 1430, Nov. 16, 2005.)

jury.  Drawing all inferences in favor of Plaintiff, the court is unable to grant

judgment as a matter of law for Defendants.[11]

## 2. Rule 59 Motion

### a.   Merit Scholarship Policy Instruction

Defendants argue that a new trial is required because the court gave an

erroneous and prejudicial jury instruction regarding the college merit scholarship

policy.  The court instructed the jury that:

> Now you have heard throughout the trial that Ms. Boone
> opposed the Office of Vocational Rehabilitation's policy
> of deducting merit scholarships from the amount of a grant
> that would otherwise be awarded, and that Ms. Boone
> contends that this policy is illegal.
>
> Whether or not this policy is legal or illegal is a federal
> legal issue, and it is not an issue for you to consider or
> decide.  Your role is to determine whether Plaintiff's
> blindness was a determinative factor in Defendants'
> decision to terminate her.

(Trial Tr. 2160, Nov. 21, 2005.)  Defendants maintain that this instruction was

confusing and conveyed that the Defendants' position with respect to the policy was

wrong and illegal.

The court notes that the language Defendants rely upon in their brief

may accurately reflect language provided to the parties in the final draft instructions,

but differs slightly from the actual instruction the court gave to the jury.  The court's

exact instruction clearly informed the jury that they were not to consider the legality

issue at all.  More importantly, however, Defendants had the opportunity to raise

---

[11] Defendants alternatively argue that a new trial is required because the liability verdict on
the discrimination claim is against the weight of the evidence.  Defendants' arguments in this regard
mirror their arguments for judgment as a matter of law.  The court's prior analysis of Defendants'
arguments applies equally here; thus, the court will likewise deny Defendants' Rule 59 motion with
respect to those grounds.

objections to this aspect of the instruction before the jury charge was finalized and did not do so.  On November 21, 2005, Defendants' counsel objected to the court's draft of the instruction on the grounds that the version under review at that time indicated that the legality of the merit scholarship policy was a legal issue for the appropriate federal agency to decide.  The court suggested a reading substantively identical to the final language as an alternative and Defendants' counsel agreed:

> THE COURT: Then I guess it should be, this is a legal issue that is not a matter for the jury to decide.
>
> MR GOLDEN: Exactly, Your Honor.

(Trial Tr. 1992, Nov. 21, 2005.)  Accordingly, the jury instruction on the merit scholarship policy did not amount to prejudicial error and the court will not grant a new trial on this ground.

### b.   Refusal to Give Parking Pass Instruction

Defendants also argue that the court erroneously refused to give a security instruction regarding Plaintiff's request for a security access card or parking pass for her driver.  Defendants maintain that the court should have instructed the jury that Plaintiff's request was not a request for a reasonable accommodation under the Americans with Disabilities Act ("ADA").  As Plaintiff counters, the evidence regarding Plaintiff's request for a parking pass or security access card for her driver was not introduced for purposes of arguing whether Defendants discriminated by denying Plaintiff a reasonable accommodation, but as evidence of discriminatory animus and hostile work environment based on the manner in which Mr. Nasuti responded to the request.  The court did not instruct the jury with respect to reasonable accommodations under the ADA because it did not want to confuse the jury or suggest that the jury should determine whether Plaintiff was denied a

reasonable accommodation.  The court will not grant Defendants' motion for a new trial on this ground.

### c.   **Exclusion of David Boyle Evidence**

In addition, Defendants contend that the court incorrectly excluded evidence regarding the hiring of David Boyle, an event that Defendants maintain was one of the bases for Plaintiff's termination.  However, as the court stated in its October 14, 2005 order (Doc. 132), Secretary Schmerin stated that he had no knowledge of David Boyle or the circumstances surrounding his hiring.  The fact that Mr. Nasuti may have had knowledge of such events is insufficient, because, as Defendants aver, Secretary Schmerin is the one who made the decision to terminate Plaintiff.  Although he admitted that he made the decision based on information Mr. Nasuti provided, he affirmatively stated that he had no knowledge regarding David Boyle and that any circumstances pertaining to David Boyle did not influence his termination decision.  Accordingly, that information was not relevant during trial and was properly excluded.[12]  The court will not grant Defendants' Rule 59 motion on this ground.

### C.   **Damages**

#### 1.   **Special Verdict Questions on Front and Back Pay**

Defendants contend that a new trial is required because the jury's responses to special verdict questions awarding $180,000 in front pay but no back

---

[12] Defendants also suggest that the redaction of information concerning David Boyle from a trial exhibit (Pl. 109) gave the jury the impression that Mr. Nasuti was hiding something at trial. However, the court explained to the jury at the time the exhibit was introduced that the "blacked out" information had been excluded "based on an order from [the court] concerning an issue in the case." (Trial Tr. 875, Nov. 10, 2005.)  Accordingly, there was no reason for the jury to infer that Mr. Nasuti was hiding something.

pay are inconsistent and prove jury confusion.  Plaintiff argues that the result can be explained by Plaintiff's failure to include her claim for back pay in the chart displayed on an easel during the portion of her testimony dealing with damages. Although Defendants correctly state the legal principles set forth in *Brooks v. Brattleboro Mem'l Hosp.*, 958 F.2d 525, 529 (2d Cir. 1992) and *Bernardini v. Int'l Terminal Operating Co., Inc.*, 512 F.2d 660, 664 (2d Cir. 1975) that directly opposing jury responses are grounds for a new trial, the court finds the instant circumstances distinguishable from the facts of those cases.  In *Brooks*, the jury failed to award damages for pain and suffering after it specifically found the defendants liable for "pain and suffering and medical expenses."  958 F.2d at 529-30.  In *Bernardini*, the verdict was vacated because the jury found against the defendant on a claim of negligence and awarded damages, but found that the defendant's vessel was not unseaworthy in a case where "a finding of unseaworthiness was a precondition to a finding of negligence."  512 F.2d at 662-63.  Thus, *Brooks* and *Bernardini* presented cases where the jury's responses to special interrogatories were substantively irreconcilable.  Such is not the case here. Although, the jury's decision to award no back pay but to award front pay may not make sense to the Defendants, the verdict form does not substantively preclude such a result as a matter of law.  Accordingly, the court will not grant a new trial on this ground.

## 2. **Emotional Distress Verdict**

Defendants move for a new trial or for remittitur on grounds that the $3,000,000 emotional distress damages award resulted from passion, prejudice, and confusion.  Although the court has the discretion to review a jury verdict and grant

remittitur, the court must "uphold the jury's award if there exists a reasonable basis to do so." *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 351, 354 (3d Cir. 2001) (internal quotations omitted).  In addition, "[t]he court may not vacate or reduce [an] award merely because [the court] would have granted a lesser amount of damages." *Id.* at 352.  Moreover, when considering an emotional damages award, "the issue to be decided [] 'is not the size of the award alone, but the evidence supporting the award.' " *Id.* at 354.

Plaintiff and others, including her husband and former co-worker, Michelle Bornman, testified regarding the emotional impact of her job loss, including severely shaking hands, which interfered with Plaintiff's ability to perform typical day-to-day tasks like pouring coffee, chopping vegetables and otherwise preparing meals, dialing the telephone, and reading braille.[13]   (Trial Tr. 202-03, Nov. 8, 2005; 611-12, Nov. 9, 2005; 1334, Nov. 14, 2005.)  In addition, Plaintiff and her husband testified that the Plaintiff experienced difficulty sleeping for at least a couple of months and experienced fatigue and other behavioral changes, which they described as frustration, decreased energy, and "walking around in a daze." (*Id.* at 313, Nov. 8, 2005; 1334, Nov. 14, 2005.)  Plaintiff and her family cancelled a vacation trip that they planned to take starting the weekend following the day of her termination. (*Id.* at 1333-34, Nov. 14, 2005.)  Also, Plaintiff and her husband testified regarding the negative impacts of observing how the news of and publicity regarding her termination affected their children. (*Id.* at 315, Nov. 8, 2005; 1334, Nov. 14, 2005.)

---

[13] *See Bolden v. S.E. Pa. Transp. Auth.*, 21 F.3d 29, 33-34 (3d Cir. 1994) (considering that others, in addition to the plaintiff, testified regarding how much he had changed as a result of his discharge).

Further, Plaintiff made the following statements describing her state of mind just before and after her dismissal:

> By the time I was fired, I had been pretty well convinced that I was a dirt bag and a terrible administrator and a hopeless –
>
> * * *
>
> I was certain, I was just certain that I was awful.
>
> * * *
>
> I had no energy.  I had no motivation.
>
> * * *
>
> I applied for jobs, because I knew we needed money, but I didn't want to do any of it.  I just felt like I was such dirt, that I wasn't worth anything at all.

(*Id.* 312-13, Nov. 8, 2005.)

This testimony, combined with the fact of Plaintiff's job loss, loss of income, testimony regarding her difficulty obtaining subsequent employment, ultimate acceptance of a part-time, lower-status position that requires a three-hour round-trip commute, all support the jury's determination that Plaintiff was entitled to emotional distress damages. *See Bolden*, 21 F.3d at 33-34 (stating that the jury could have inferred emotional distress from lost income and the discharge itself).  In addition, the court, after observing the trial testimony of Mr. Nasuti and Secretary Schmerin, cannot say that it would have been unreasonable for the jury to take their tone and demeanor into account and factor it into an emotional distress award calculation.  *See Evans*, 273 F.3d at 355 (3d Cir. 2001) (upholding the district court's discretion to consider the demeanor and testimony of the defendant's witnesses when reviewing the appropriateness of an emotional distress award).

25

However, even considering all of the evidence discussed here, the court finds that an award of $3,000,000 is unreasonable.  Although the evidence is sufficient to establish emotional distress, particularly during the time immediately prior to and following Plaintiff's termination, the court notes that Plaintiff is a strong-willed, accomplished woman who at the time of trial no longer appeared to be suffering from emotional distress in the manner described.  Therefore, the amount awarded by the jury is excessive and unreasonable.  In light of all of the evidence, the court finds that $1,000,000 is a reasonable amount.  Accordingly, the court will remit $2,000,000.  If the Plaintiff chooses not to accept the remittitur then a new trial will be required.

### 3.  Relocation Instruction

Defendants also argue that a new trial is required because the court gave an erroneous instruction on relocation.[14]  Defendants contend that because the governing standard for mitigation is reasonableness,[15] the reasonableness inquiry determines whether relocation is required.  However, case law does not support this

---

[14]  The court's front pay instruction included the statement "Plaintiff is not required to relocate in order to mitigate her damages."  (Trial Tr. 2165, Nov. 21, 2005.)

[15]  The court gave the following mitigation of damages instruction, which included the reasonableness standard:

> Now, even if you find for Plaintiff on either or both of her claims, Plaintiff has an obligation under the law to mitigate her damages; that is, to take advantage of any reasonable opportunity she may have had under the circumstances to reduce or minimize the loss or damages.

> This means that she must exercise reasonable diligence to locate employment which was equivalent to her employment with Defendants.  Defendants have the burden of proving that substantially equivalent work was available and that Plaintiff did not exercise reasonable diligence to obtain that employment.

(Trial Tr. 2167, Nov. 21, 2005.)

theory; in fact, it suggests just the opposite.  *See E.E.O.C. v. Pennsylvania*, 772 F. Supp. 217, 222 (M.D. Pa. 1991) (finding that relocation was not required and rejecting argument that relocation would be reasonable where plaintiff had been subject to relocation as an employee) (citations omitted).  Thus, the court's instruction that Plaintiff was not required to relocate in order to mitigate damages was correct.

Moreover, the court notes that even though Plaintiff was not required to do so, she ultimately took a new job in Baltimore, Maryland.  Plaintiff testified regarding the effects of her dismissal on herself and her family and that she had promised her children that they would not move again.  The court notes that the jury was also free to consider this testimony when considering whether Plaintiff mitigated her damages.[16]  Accordingly, the court will not grant Defendants' Rule 59 motion based on the mitigation and relocation instructions.

### 4. Punitive Damages

Defendants request that the jury's punitive damages award be vacated, arguing that there was insufficient evidence of malice by Mr. Nasuti or Secretary Schmerin to support the award.  The court instructed the jury that "[t]he purposes of punitive damages are to punish a Defendant and deter a Defendant and others from committing similar acts in the future."  (Trial Tr. 2191, Nov. 22, 2005.)  *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 n.9 (1986).  In addition, the court instructed the jury that punitive damages were warranted only in cases where a defendant's "conduct was malicious or in reckless disregard of Plaintiff's

---

[16]  Special Verdict Question No. 7 asked "Has Plaintiff failed to mitigate her damages?" The jury marked "No" on the verdict form.

rights." (Trial Tr. 2191-92, Nov. 22, 2005.)  The court defined malicious conduct as conduct "accompanied by ill will or spite or if it is for the purpose of injuring another" (*id.* 2192) and defined reckless disregard as conduct "that, under the circumstances, reflects complete indifference to the safety and rights of others" (*id.*).

In light of the testimony from Plaintiff and others regarding statements and conduct of Mr. Nasuti and Mr. Nasuti's interactions with and communications to Plaintiff, as well as observations of Mr. Nasuti's demeanor and character during trial, the court cannot say that the jury's award of punitive damages is unreasonable. Similarly, consideration of the demeanor and character of Secretary Schmerin at trial, taken in conjunction with testimony regarding the manner in which he handled Plaintiff's termination, supports the court's conclusion that the jury's award of punitive damages was reasonable with respect to him as well.

**D.    First Amendment Retaliation Argument**

Defendants also move for new trial on the grounds that Plaintiff's counsel included a First Amendment retaliation claim in his closing argument.  The court did not allow Plaintiff to introduce a First Amendment retaliation claim during the summary judgment phase of the proceedings.  Subsequently, Plaintiff omitted retaliation from the trial portion of the proceedings.  In addition, neither the court's instructions to the jury nor the verdict form included a First Amendment retaliation claim.  Furthermore, Defendants failed to object to any portion of Plaintiff's counsel's closing argument or request a curative instruction.  For these reasons, the court will deny Defendants' motion for a new trial with respect to the First Amendment retaliation argument.

**IV.**        **<u>Conclusion</u>**

        For the foregoing reasons the court will deny Defendants' motion in part and grant it in part.  The court will remit $2,000,000 in emotional distress damages, but deny Defendants' motion in all other respects.  An appropriate order will follow.

<u>s/Sylvia H. Rambo</u>
SYLVIA H. RAMBO
United States District Judge

Dated:  June 8, 2006.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTINE BOONE,** | : | **CIVIL NO. 1:CV-04-0588** |
| **Plaintiff,** | : | **JUDGE SYLVIA H. RAMBO** |
| | : | |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA OFFICE OF** | : | |
| **VOCATIONAL REHABILITATION,** | : | |
| *et al.,* | : | |
| **Defendants.** | : | |

# O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendants' Post-Trial Motion Pursuant to Federal Rules of Civil Procedure 50 and 59 for Judgment as a Matter of Law, for a New Trial, or to Amend the Judgment (Doc. 204) is **GRANTED** in part and **DENIED** in part, as follows:

1) The court remits $2,000,000 of the jury's emotional distress damages award;

2) If Plaintiff does not accept $1,000,000 for emotional distress damages then a new trial will be required. Plaintiff shall notify the court regarding her decision no later than June 15, 2005;

3) Defendants' motion is **DENIED** in all other respects; and

4) The court will defer amending the judgment pending notification of the Plaintiff's position with regard to paragraph 2) of this order.

                        s/Sylvia H. Rambo
                        SYLVIA H. RAMBO
                        United States District Judge

Dated:  June 8, 2006.